752 A.2d 1217

Barbara SOLOMON, M.D.

v.

BOARD OF PHYSICIAN QUALITY ASSURANCE.

No. 1481, Sept. Term, 1999.

Court of Special Appeals of Maryland.

June 6, 2000.

**448**

Mercedes C. Samborsky, Joppatowne (William H. Klumpp, Jr., Fallston, on the brief), for appellant.

S. Earlene Pendley, Staff Attorney (J. Joseph Curran, Jr., Attorney General and Thomas W. Keech, Assistant Attorney General, on the brief), Baltimore, for appellee.

Argued before SONNER, KENNEY and KRAUSER, JJ.

KRAUSER, Judge.

Appellant, Barbara Solomon, M.D., filed a complaint in the Circuit Court for Baltimore County to quash a *subpoena duces tecum* issued by appellee, the Board of Physician Quality Assurance ("the Board"), to obtain from appellant her patient

appointment schedule for the last three months of 1998.[1] Earlier, the Board had completed an investigation of a complaint filed by one of Dr. Solomon's patients. The patient claimed that she had not been adequately advised of the diagnostic procedures and methods of treatment employed by the doctor in her alternative medicine practice. After advising appellant to use appropriate disclosure and consent forms and that it would perform a follow-up review in six months, the Board closed the case. Six months later, it issued the subpoena in question as part of an effort to determine whether appellant had complied with its directive. Appellee then filed a motion to dismiss the complaint to quash its subpoena. That motion was granted, with prejudice, by the circuit court. Appellant then noted this appeal.

Dr. Solomon contends that the circuit court erred in dismissing her complaint because the Board had no lawful authority to issue a subpoena after closing the case that had prompted the investigation of her practice. Appellant further maintains that the Board may not lawfully issue a subpoena in the absence of a pending written complaint or renew an investigation more than eighteen months after receipt of a complaint. Although we are concerned about the scope of the subpoena in question, as it appears that it may have been intended to obtain a range of information that goes beyond the question of "informed consent,"[2] we have no evidence before us—only appellant's bald and premature allegation of a "fishing expedition"—that the Board has exceeded its lawful authority. We therefore shall affirm the decision of the circuit court for the reasons set forth below. We caution the Board,

---

1. Another *subpoena duces tecum* was issued by the Board almost 5 months later, requesting appellant's patient appointment schedule for the months of January, February, and March of 1999. The subpoena was issued after the circuit court granted appellee's motion to dismiss and is not part of this appeal.

2. Appellee's attorney stated at oral argument before this Court that appellee intended to use appellant's patient schedule to review the records of a random sampling of those patients and not just the disclosure and consent forms executed by those patients.

however, that if its investigation proceeds beyond the scope of the issues raised in the initial complaint, without any reasonable justification, we may take a different view of this matter.

## BACKGROUND

In February of 1997, the Board received a complaint from a patient of Dr. Solomon's claiming, among other things, that she had not been adequately informed by appellant of the diagnostic procedures and methods of treatment that appellant employed.[3]  After conducting a preliminary investigation of that complaint, which included visiting appellant's office and consulting with the Food and Drug Administration on appellant's use of the Computonix System for diagnostic testing, a subcommittee of the Board recommended that no formal charges be filed against her.  On August 26, 1998, the Board sent appellant an advisory letter, in accordance with COMAR 10.32.02.03 C(1)(b),[4] notifying her that the complaining patient's case was closed.  That letter also advised her of the need to give each patient "complete disclosure including risks" about "experimental techniques" she intended to use and that "a patient disclosure form along with a signed and dated consent form should be made part of the patient's medical records."  It then informed her:

---

**3.** A copy of that complaint is not in the record before us.  We therefore rely on the parties' description of the contents of that letter in their briefs.

**4.** COMAR 10.32.02.03 C(1) states:
   After reviewing the completed investigatory information and reports, the Board shall make its determination to:
   (a) Dismiss the complaint;
   (b) Take informal action by issuing an advisory letter;
   (c) Request the respondent to enter into a disposition agreement · with the Board;
   (d) Issue a cease and desist order;
   (e) Vote to charge the respondent with a violation of the Medical Practice Act or COMAR 10.32.07;
   (f) Vote to deny original licensure or reinstatement of licensure;  or
   (g) Vote to accept a surrender on terms acceptable to the Board.

**Six months from the date of this letter the Board will be conducting a re-review of your practice.** Board staff will obtain patient records, initiated after the date of this letter, in which experimental techniques were implemented. Each record will be reviewed regarding issues of standard of care to include a review of documentation of signed diagnoses and treatment disclosure forms and informed consent forms for each patient.

Approximately six months later, on February 19, 1999, in accordance with Maryland Code (1981, 1994 Repl.Vol., 1998 Supp.) § 14–401(c)(2)(i) of the Health Occupations Article ("HO"),[5] the Board sent a letter to the Medical and Chirurgical Faculty ("Med Chi"), requesting that it conduct a review of appellant's practice, including a review of her patient consent and disclosure forms. The Board then issued the *subpoena duces tecum*, which is the subject of this appeal, requesting her "complete appointment schedule for October, November and December 1998, along with a list of all hospitalized patients during this period, reasons for and date of hospitalization, and the name of the hospital, which materials are in your custody, possession or control." The Board later limited the subpoena's scope to include only her appointment schedule for October, November, and December of 1998.

Refusing to surrender the records requested in the absence of an open complaint against her, appellant filed an action in the Circuit Court for Baltimore County to quash the subpoena. In response, appellee filed a motion to dismiss that action, asserting that the Board is authorized by law to proceed as it had. Appellant then filed a motion to strike the motion to dismiss.

---

**5.** HO § 14–401(c)(2)(i) states:

After performing any necessary preliminary investigation of an allegation of grounds for disciplinary or other action, the Board shall refer any allegation involving standards of medical care, as determined by the Board, and any allegation based on § 14–404(a)(19) to the Faculty for further investigation and physician peer review within the involved medical specialty or specialties.

On July 26, 1999, a hearing on the motion to dismiss was held in the Circuit Court for Baltimore County. At the conclusion of that hearing the circuit court dismissed appellant's complaint with prejudice, declaring that appellant has "no right to quash the administrative investigatory subpoena that was issued in this case." On August 2, 1999, appellant noted this appeal.

## The Maryland Medical Practice Act

Before addressing the issues presented by this appeal, we believe it would be helpful to review briefly the procedures the Board must follow in investigating complaints against physicians. These procedures are governed by the Maryland Medical Practice Act (the "Act") (Maryland Code, title 14 of the Health Occupations Article), and regulations adopted by the Board that are codified in COMAR 10.32.02.

"When an allegation that may constitute grounds for disciplinary action against a physician comes to the Board's attention, the Board is required to conduct a preliminary investigation." *Board of Physician Quality Assurance v. Levitsky*, 353 Md. 188, 190–91, 725 A.2d 1027, 1028 (1999) (citing HO § 14–401(a)). Upon completing that preliminary investigation, the Board may, among other things, issue an advisory letter that "informs, educates, or admonishes a health care provider in regard to the practice of medicine under the Medical Practice Act." *See* COMAR 10.32.02.02 B(4)(defining advisory letter); 10.32.02.03 C(1)(b).[6] It may also refer the allegation to Med Chi for further investigation. HO § 14–401(c)(1)(i). Med Chi then must "report to the Board on its investigation within 90 days after the referral." HO § 14–401(e)(1)(i). Med Chi's report "shall contain the information and recommendations necessary for appropriate action by the Board." HO § 14–401(e)(2). The Board is then authorized to "take the action, *including further investigation,* that it finds appropriate under this title." HO § 14–401(e)(3) (emphasis added). If warranted, the Board may charge the physician with a violation of

---

6. *See supra* n. 4.

the Act. *See* COMAR 10.32.02.03 C(1)(e).[7] Before taking any disciplinary action, however, the Board must give the physician an opportunity for a hearing before an administrative law judge. HO § 14–405(a)–(b). The physician is entitled to be represented by counsel, and all factual findings must be supported by clear and convincing evidence. HO § 14–405(b)–(c). At the conclusion of the hearing, the administrative law judge "shall refer proposed factual findings to the Board for the Board's disposition." HO § 14–405(e). If a physician disagrees with the proposed decision, he or she has a right to an exceptions hearing before the Board. *See* COMAR 10.32.02.03 F. If a majority of the Board's "full authorized membership" finds grounds for disciplinary action, the Board is authorized to impose any of the sanctions set forth in HO § 14–404(a).[8]

## DISCUSSION

### I

The principal issue in this appeal is whether the Board has the right to investigate the quality of medical care appellant is providing her patients as a result of concerns that arose in the course of investigating a patient complaint that the Board had formally closed. Appellant argues that, once the Board had closed that complaint, it lacked the authority to "re-review" appellant's practice, to investigate any concerns arising out of the initial case, and to issue subpoenas pursuant to that investigation.

There is no dispute that the Board has a right to investigate an alleged violation of the Act upon the receipt of a written complaint, as it did in the instant case. HO § 14–205(a)(2).

---

7. *See supra* n. 4.

8. HO § 14–404(a) states, in part:

> Subject to the hearing provisions of § 14–405 of this subtitle, the Board, on the affirmative vote of a majority of its full authorized membership, may reprimand any licensee, place any licensee on probation, or suspend or revoke a license. . . .

Nor is there any dispute that the Board has the authority to issue subpoenas in furtherance of an investigation. HO § 14–401(g).

Although the Board closed the individual complaint that had been filed against appellant, that complaint apparently gave rise to the Board's concern that appellant might have also failed to obtain other patients' informed consent to her methods of diagnosis and treatment. It therefore issued an advisory letter to appellant, informing her, among other things, that her practice would be "re-reviewed" in six months on the issue of informed consent and that her patient records would then be examined to determine her compliance with the standard of care. Unquestionably, the issuance of an advisory letter lies within the discretion of the Board. *See* COMAR 10.32.02.03 C(1)(b).[9]

Indeed, the Board's decision to close the complaint, rather than leave it open until Med Chi's investigation was completed, appears to have been made principally, and perhaps solely, for the benefit of appellant. It is the Board's policy to close such complaints, even if follow-up action is necessary, so that a physician does not have to continue practicing medicine under a cloud when no disciplinary action is anticipated. The Board, in its brief, described the reasoning underlying this policy as follows:

> If an original case were kept open while the Board investigated newly-discovered possible practice deficiencies, cases would be pending against Maryland licensed physicians for a longer period of time. Meanwhile, those physicians would have to disclose to employers and other licensing Boards that a case was pending against them. Under the Board's interpretation and current practice, however, physicians can truthfully answer that no disciplinary complaint is pending against them, even though the Board may have identified possible deficiencies in their medical practices.

---

**9.** *See supra* note 4.

Appellant's position that the closing of the initial complaint against her precludes the Board from investigating any concerns that may have arisen as a result of the investigation of that complaint finds no support in law or logic. Nowhere does the Act suggest, either expressly or impliedly, that the closing of a specific complaint terminates the Board's authority to perform a follow-up investigation or to take remedial action.

Moreover, as the Court of Appeals held in *Board of Physician Quality Assurance v. Banks*, 354 Md. 59, 69, 729 A.2d 376, 381 (1999), "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. Furthermore, the expertise of the agency in its own field should be respected." (Citations omitted.) Therefore, we must accord the Board's interpretation of the Maryland Medical Practice Act considerable weight and deference.

Finally, appellant's interpretation of the Board's authority, if accepted, would strip the Board of its ability to monitor deficiencies in medical practice that have not yet arisen to the level of a violation of the standard of care and leave the Board with no means for determining whether corrective action requested by the Board has been taken by a physician. Such a narrow reading would thwart the Legislature's intent to provide the Board with sufficient authority to assure a high standard of medical care from physicians licensed in this State.

## II

Appellant next contends that the Board's issuance of the subpoena in question was barred by the Act's express intent "that the disposition of every complaint . . . shall be completed as expeditiously as possible and, in any event, within 18 months after the complaint was received by the Board." HO § 14–401(i). There is no dispute that the subpoena was issued more than eighteen months after the complaint against appellant was received.

■ "The question of whether a statutory provision using the word 'shall' is mandatory or directory 'turns upon the intention of the Legislature....'" *Resetar v. State Board of Education,* 284 Md. 537, 547, 399 A.2d 225, 230, *cert. denied* 444 U.S. 838, 100 S.Ct. 74, 62 L.Ed.2d 49 (1979) (quoting *Hitchins v. City of Cumberland,* 215 Md. 315, 323, 138 A.2d 359, 363 (1958)). One indication that the Legislature intended a time limitation to be directory instead of mandatory is if, as here, there is no sanction for noncompliance. *G & M Ross Enterprises, Inc. v. Board of License Commissioners of Howard County,* 111 Md.App. 540, 543, 682 A.2d 1190, 1192 (1996).

Moreover, one of the 1988 amendments to the Health Occupations Article provides as follows:

SECTION 6. AND BE IT FURTHER ENACTED, That the time ~~limitations~~ *frames* for ~~investigating and~~ completing the disposition of complaints that set forth allegations of grounds for disciplinary or other action established under *the Health Occupations Article, § 14–501(h)* [,] *of* this Act are directory to the Board of Physician Quality Assurance and may not be construed as a defense or bar to a complaint or any action on a complaint against a licensee in any proceedings arising out of this Act.[10]

1988 Md. Laws, Chap. 109.

By striking the term "limitations," the Legislature made it clear that the eighteen month period for completing the disposition of complaints is directory and not mandatory. Accordingly, the Board is not barred from extending its investigation of appellant's practice more than eighteen months after receiving the initial complaint against her.

### III

■ Finally, appellant's contention that the Board illegally changed the substantive elements required to prove a physician's breach of the standard of care is not properly before this Court. That issue was not raised below, as appellant

---

**10.** HO § 14–501(h) was subsequently re-codified in HO § 14–401(i).

concedes in her brief; therefore it was not preserved for appeal. *See* Maryland Rule 8–131(a); *see also Davis v. DiPino,* 337 Md. 642, 647, 655 A.2d 401, 403 (1995). Nor is her claim ripe for review, as appellant has not yet been disciplined or even charged by the Board. *See Stevenson v. Lanham,* 127 Md.App. 597, 612, 736 A.2d 363, 371 (1999) (holding that "a case ordinarily is not ripe 'if it involves a request that the court declare the rights of parties upon a state of facts which has not yet arisen or upon a matter which is future, contingent and uncertain.' ").

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**