845 A.2d 47

**Barbara A. SOLOMON, M.D.**

**v.**

**STATE BOARD OF PHYSICIAN QUALITY ASSURANCE.**

**No. 361, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Dec. 19, 2003.

Reconsideration Denied March 8, 2004.

688

690

John M. DiJoseph of Arlington, VA, Mercedes C. Samborsky of Joppatown, for appellant.

Sarah E. Pendley (Joseph Curran, Jr., Attorney General on the brief), Baltimore, for appellee.

Argued before HOLLANDER, ADKINS, BARBERA, JJ.

BARBERA, Judge.

In this, her second appeal before this Court, appellant, Barbara A. Solomon, M.D., challenges the decision of the Board of Physician Quality Assurance ("the Board") to revoke her medical license because she "fail[ed] to cooperate with a lawful investigation," pursuant to Maryland Code (1981, 1994 Repl.Vol., 1999 Supp.), § 14–404(a)(33) of the Health Occupations Article ("HO"). In December 1999, the Board issued a *subpoena duces tecum* commanding that Dr. Solomon produce the medical records of 19 of her patients. Dr. Solomon refused to comply with the subpoena on the grounds that she was not under investigation by the Board for misconduct, the subpoena was overbroad, and her compliance with the subpoena would violate her patients' privacy rights.

One year after issuing the subpoena, the Board revoked Dr. Solomon's medical license. Dr. Solomon filed a petition for judicial review in the Circuit Court for Baltimore County, which affirmed the Board's decision. On appeal, Dr. Solomon presents eight questions, which we have distilled into three:

I. Was Dr. Solomon entitled to resist the Board's subpoena on the grounds that: (1) no investigation was underway at the time; (2) the subpoena was overbroad; and (3) it violated the Confidentiality of Medical Records Act, HIPAA, and the physician-patient privilege?

II. Did the administrative law judge err or abuse her discretion in denying Dr. Solomon's request to call a number of witnesses to testify on her behalf?

III. Did the Board abuse its discretion by subjecting Dr. Solomon to "excessive punishment," when it revoked her license to practice medicine?

For the reasons that follow, we affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

Most of the relevant underlying facts are contained in the opinion of this Court, *Solomon v. Board of Physician Quality Assurance*, 132 Md.App. 447, 752 A.2d 1217, *cert. denied*, 360 Md. 275, 757 A.2d 811 (2000) *("Solomon I ")*. We therefore borrow liberally from the recitation of facts in that opinion.

In February 1997, the Board received a complaint from a patient of Dr. Solomon claiming, among other things, that she had not been adequately informed by Dr. Solomon of the diagnostic procedures and methods of treatment employed. After conducting a preliminary investigation of that complaint, which included visiting Dr. Solomon's office and consulting with the Food and Drug Administration about Dr. Solomon's use of the Computonix System for diagnostic testing, a sub-committee of the Board recommended that no formal charges be filed against Dr. Solomon.

On August 26, 1998, the Board sent Dr. Solomon an advisory letter notifying her that the complaining patient's case was closed. The letter nevertheless advised Dr. Solomon of the need to give each patient complete disclosure including risks about "experimental techniques" she intended to use, and that "a patient disclosure form along with a signed and dated consent form should be made part of the patient's medical records." The letter also included the following notice:

**Six months from the date of this letter the Board will be conducting a re-review of your practice.** Board staff will obtain patient records, initiated after the date of this letter, in which experimental techniques were implemented. Each record will be reviewed regarding issues of standard of care to include a review of documentation of signed diagnoses and treatment disclosure forms and informed consent forms for each patient.

On February 19, 1999, the Board sent a letter to the Medical and Chirurgical Faculty, requesting that it conduct a review of Dr. Solomon's practice, including a review of her patient consent and disclosure forms. Several weeks later, the Board issued a *subpoena duces tecum* to Dr. Solomon,

commanding her to produce her "complete appointment schedule for October, November and December 1998, along with a list of all hospitalized patients during this period, reasons for and date of hospitalization, and the name of the hospital, which materials are in your custody, possession or control." The Board later limited the subpoena's scope to include only Dr. Solomon's appointment schedule for October, November, and December 1998.

Refusing to surrender the records requested in the absence of an open complaint against her, Dr. Solomon filed an action in the Circuit Court for Baltimore County to quash the subpoena. In response, the Board filed a motion to dismiss that action, asserting that the Medical Practice Act authorized it to proceed as it had done. Dr. Solomon responded with a motion to strike the Board's motion to dismiss.

On July 26, 1999, a hearing on the motion to dismiss was held in the Circuit Court for Baltimore County. At the conclusion of the hearing, the court dismissed Dr. Solomon's complaint with prejudice, declaring that she has "no right to quash the administrative investigatory subpoena that was issued in this case." [1]

Dr. Solomon noted an appeal to this Court, *Solomon I.* Then, on November 22, 1999, she turned over the appointment logs to the Board.

On December 2, 1999, the Board issued another subpoena. This subpoena commanded Dr. Solomon to produce within 21 business days "the entire medical chart, including, but not limited to, the billing records" of 19 patients randomly selected from the appointment logs. Dr. Solomon refused to comply with the subpoena, asserting that disclosure of her patients' medical records without consent violated their privacy.[2]

---

**1.** After Dr. Solomon's failure to comply with the initial subpoena, the Board reissued the subpoena three more times, on July 27, 1999, October 13, 1999, and November 16, 1999.

**2.** Also in December 1999, some of Dr. Solomon's patients filed a petition in the United States District Court for the District of Maryland

On May 25, 2000, approximately six months after the December 2nd subpoena issued, the Board charged Dr. Solomon with unprofessional conduct in the practice of medicine and failure to cooperate with a lawful Board investigation. Several weeks later, we filed *Solomon I,* affirming the circuit court's denial of Dr. Solomon's action to quash the initial 1999 subpoena.

An evidentiary hearing on the Board's charges was conducted by an Administrative Law Judge ("ALJ") in November 2000. The following month, the ALJ issued her Proposed Decision. The ALJ made extensive fact findings, from which she concluded that Dr. Solomon had "repeatedly failed to cooperate with the Board's lawful investigation," and that this failure constituted "unprofessional conduct in the practice of medicine." The ALJ proposed that Dr. Solomon's license be revoked.

Dr. Solomon filed exceptions with the Board. After a hearing on March 28, 2001, the Board issued its final order, adopting the ALJ's findings of fact and conclusions save for the ALJ's conclusion that Dr. Solomon had engaged in unprofessional conduct in the practice of medicine. The Board agreed with the ALJ's proposed sanction, adding:

> Dr. Solomon's license will be revoked. The Board needs to review Dr. Solomon's medical records before it can determine whether she is practicing competently and within the standard of care. Without medical records, which document the medical care she is rendering, the Board will never know this, and will be completely unable to fulfill its mission to protect the public. As of the date of this Final Order, Dr. Solomon has not turned over the nineteen (19) patient records for which the Board issued a subpoena on Decem-

seeking a temporary restraining order and preliminary injunction to preclude the Board from seizing the medical records until there is a "full and fair hearing" concerning their privacy rights. *See Patients of Dr. Barbara Solomon v. Board of Physician Quality Assurance,* 85 F.Supp.2d 545 (D.Md.1999). The district court denied the petition.

ber 2, 1999; furthermore, she has testified that she does not intend to comply with that subpoena.

Dr. Solomon filed a petition for judicial review of the Board's order in the Circuit Court for Baltimore County. After hearing arguments from counsel, the court affirmed the Board's decision. From the entry of judgment on that order, Dr. Solomon filed this timely appeal.[3]

## DISCUSSION

### Standard of Review

The standard to be applied in reviewing a decision of an administrative agency was recently restated in *Finucan v. State Board of Physician Quality Assurance*, 151 Md.App. 399, 827 A.2d 176, *cert. granted*, 377 Md. 275, 833 A.2d 31 (2003): "Appellate review of an administrative agency's decision is narrow." *Id.* at 411, 827 A.2d 176. We are " ' "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." ' " *Id.* (citation omitted).

" '[T]he expertise of the agency in its own field should be respected.' " *Id.* (citation omitted). Therefore, " 'an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.' " *Id.* (citation omitted). When reviewing the ALJ's legal conclusions, however, " 'the court "must determine whether the agency interpreted and applied the correct principles of law governing the

---

3. On June 2, 2002, Dr. Solomon submitted the patient records to the Board in connection with her application for reinstatement of her medical license. The parties agree that the record does not contain facts pertaining to Dr. Solomon's reinstatement application, but even if it did, those facts are not relevant to the question of whether Dr. Solomon was legally excused from complying with the Board's December 2nd subpoena. The parties also agree, and we concur, that Dr. Solomon's submission of the records does not render moot the question we decide, *i.e.*, whether the Board could revoke Dr. Solomon's license for having "fail[ed] to cooperate with a lawful investigation."

case and no deference is given to a decision based solely on an error of law.' " " *McKay v. Department of Pub. Safety & Corr. Servs.*, 150 Md.App. 182, 193, 819 A.2d 1088, *cert. denied,* 376 Md. 50, 827 A.2d 113 (2003) (citations omitted).

## I.

[5] We can quickly dispose of one contention raised by Dr. Solomon. She argues that the circuit court "did not apply the correct standard for review to its analysis and determination of the issues of law." It is settled, however, that "in an administrative appeal, it makes no difference whether or not the trial judge applied the correct standard for review." *Gabaldoni v. Board of Physician Quality Assurance*, 141 Md.App. 259, 273, 785 A.2d 771 (2001). This is so because "[o]ur role in reviewing the decision of an administrative agency is precisely the same as that of the circuit court. We, therefore, do not evaluate the findings of fact and conclusions of law made by the circuit court; instead, 'we review the administrative decision itself.' " *Id.* (citations omitted); *accord Mayberry v. Board of Educ. of Anne Arundel County,* 131 Md.App. 686, 700–01, 750 A.2d 677 (2000).

## II.

Dr. Solomon lodges several challenges to the Board's conclusion that she violated HO § 14–404(a)(33). She advances six grounds for why the Board should not have found her to have failed to cooperate with a lawful investigation solely because of her noncompliance with the subpoena.

■ Dr. Solomon argues, first, that she was not required to surrender the requested records in the absence of an ongoing "investigation regarding licensure, certification, or discipline of a health professional or the improper practice of a health profession," pursuant to Maryland Code (1982, 1994 Repl.Vol., 1999 Supp.), § 4–306(b)(2)(i), (ii) of the Health General Article ("HG"). This section of the Confidentiality of Medical Records Act ("CMRA" or "the Act"), permits, in certain circum-

stances, disclosure of patient records without the patient's authorization. HG 4–306(b)(2) provides:

> (b) *Permitted disclosures.*—A health care provider shall disclose a medical record without the authorization of a person in interest:
>
> * * *
>
> (2) Subject to the additional limitations for a medical record developed primarily in connection with the provision of mental health services in § 4–307 of this subtitle, to health professional licensing and disciplinary boards, in accordance with a subpoena for medical records for the sole purpose of an investigation regarding:
>
> (i) Licensure, certification, or discipline of a health professional; or
>
> (ii) The improper practice of a health profession.

Dr. Solomon asserts that the Board's December 2nd subpoena "was not for any of the permitted statutory purposes." She reasons that there was no ongoing investigation; consequently, she properly resisted the subpoena.

We rejected a very similar argument made by Dr. Solomon in *Solomon I.* In that appeal, Dr. Solomon contended "that the circuit court erred in dismissing her complaint because the Board had no lawful authority to issue a subpoena after closing the case that had prompted the investigation of her practice." 132 Md.App. at 449, 752 A.2d 1217. Dr. Solomon further maintained "that the Board may not lawfully issue a subpoena in the absence of a pending written complaint." *Id.*

To these arguments, Judge Krauser, writing for this Court, responded:

> Appellant's position that the closing of the initial complaint against her precludes the Board from investigating any concerns that may have arisen as a result of the investigation of that complaint finds no support in law or logic. Nowhere does the Act suggest, either expressly or impliedly, that the closing of a specific complaint terminates

the Board's authority to perform a follow-up investigation or to take remedial action.

Moreover, as the Court of Appeals held in *Board of Physician Quality Assurance v. Banks*, 354 Md. 59, 69, 729 A.2d 376, 381 (1999), "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. Furthermore, the expertise of the agency in its own field should be respected." (Citations omitted.) Therefore, we must accord the Board's interpretation of the Maryland Medical Practice Act considerable weight and deference.

Finally, appellant's interpretation of the Board's authority, if accepted, would strip the Board of its ability to monitor deficiencies in medical practice that have not yet arisen to the level of a violation of the standard of care and leave the Board with no means for determining whether corrective action requested by the Board has been taken by a physician. Such a narrow reading would thwart the Legislature's intent to provide the Board with sufficient authority to assure a high standard of medical care from physicians licensed in this State.

*Id.* at 455, 752 A.2d 1217.

Our analysis in *Solomon I* is equally applicable to the contention Dr. Solomon now presents. The CMRA, on which Dr. Solomon relies, neither expressly nor impliedly dictates that the closing of a specific complaint terminates the Board's authority to conduct a follow-up investigation. Moreover, the re-review of Dr. Solomon's practice was, in any case, an "investigation," as contemplated by HG § 4-306(b)(2).

Dr. Solomon also argues that the Board's December 2nd subpoena exceeded the scope of the original patient complaint filed in February 1997. Dr. Solomon attempts to capitalize upon the language found in the second paragraph of *Solomon I*, in which we said:

Although we are concerned about the scope of the subpoena in question, as it appears that it may have been intended to

obtain a range of information that goes beyond the question of "informed consent" [], we have no evidence before us— only appellant's bald and premature allegation of a "fishing expedition"—that the Board has exceeded its lawful authority.

132 Md.App. at 449, 752 A.2d 1217.

Our concern expressed in the above passage of *Solomon I* stemmed from the absence of the patient complaint in the record then on appeal. The record before us in the current appeal contains a copy of the patient complaint, which "reported concerns regarding the standard of care [employed by Dr. Solomon], the removal of dental amalgam filings, informed consent, the use of experimental procedures, and unprofessional billing practices." Given the scope of the complaint, the concern we raised in *Solomon I* has disappeared.

Neither are we concerned about the scope of the December 2nd subpoena. In *Banach v. State of Maryland Comm'n on Human Relations*, 277 Md. 502, 356 A.2d 242 (1976), the Court of Appeals set forth a three-part test for determining the validity of a subpoena issued by an administrative agency. Adopting the test first articulated in *Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 208, 66 S.Ct. 494, 90 L.Ed. 614 (1946), the Court in *Banach* stated that to determine a subpoena's validity, a reviewing court must ask "[w]hether the inquiry is authorized by statute, the information sought is relevant to the inquiry, and the demand is not too indefinite or overbroad." 277 Md. at 506, 356 A.2d 242; *accord Scheck v. Maryland Sec. Comm'r*, 101 Md.App. 390, 393, 646 A.2d 1092, *cert. denied*, 337 Md. 43, 650 A.2d 726 (1994). It is the last part of the test that Dr. Solomon complains was not satisfied by this subpoena.

■ The subpoena was not overbroad. Indeed, the reason for the Board's interest in Dr. Solomon's patients' records is evident: Review of a random sampling of those records would undoubtedly yield information regarding the quality of medical care Dr. Solomon provided, including diagnostic and treatment information. Review of the records would also elicit informa-

tion about Dr. Solomon's coding and billing practices. Limiting the Board's examination to whether an "informed consent" form was included in the patients' files, as Dr. Solomon suggests, would not provide the information necessary to assist the Board in determining if Dr. Solomon is rendering appropriate medical care.

Dr. Solomon argues that the Board's December 2nd subpoena was "improperly issued, invalid, and unenforceable" because it lacked the required patient certification, pursuant to HG § 4–306(b)(6)(i). That subsection provides:

(b) *Permitted disclosures.*—A health care provider shall disclose a medical record without the authorization of a person in interest:

\* \* \*

(6)(i) Subject to the additional limitations for a medical record developed primarily in connection with the provision of mental health services in § 4–307 of this subtitle *and except as otherwise provided in items (2), (7), and (8) of this subsection,* in accordance with compulsory process, if the subpoena, summons, warrant, or court order contains a certification that:

1. A copy of the subpoena, summons, warrant, or court order has been served on the person whose records are sought by the party seeking the disclosure or production of the records; or

2. Service of the subpoena, summons, warrant, or court order has been waived by the court for good cause.

(Emphasis supplied.) This subsection excepts from its applicability subpoenas issued under subsection (b)(2), which, as we have discussed, applies here because the Board was investigating Dr. Solomon's practice. Furthermore, the Board issued the December 2nd subpoena pursuant to HO §§ 14–206(a) and 14–401(g).[4] Neither of these statutes contains a requirement

---

4. HO 14–206(a) provides: "Over signature of an officer, the executive director, or the deputy director of the Board [of Physician Quality

that the patient whose medical records have been subpoenaed certify receipt of a copy of the subpoena.

Dr. Solomon's next contention does not detain us long. She argues that the CMRA prohibited her from complying with the Board's subpoena because the Board requested patient records in a manner and for a purpose not allowed by the Act. Dr. Solomon reasons that because the CMRA protects patients' privacy rights by preventing physicians from disclosing patient medical records absent patient consent, she rightly refused to comply with the subpoena. We disagree. When the CMRA is read in its entirety, it is clear that the General Assembly contemplated the use of medical records, for which no patient consent has been secured, in certain administrative and judicial proceedings.

In *Shady Grove Psychiatric Group v. State,* 128 Md.App. 163, 168, 736 A.2d 1168 (1999), we reiterated that "the purpose of the [CMRA] was to provide for the confidentiality of medical records, to establish clear and certain rules for the disclosure of medical records, and generally to bolster the privacy rights of patients." In bolstering the privacy rights of patients, however, the General Assembly did not foreclose disciplinary review boards from accessing medical records relating to an investigation of a health care provider. This is evident from the inclusion in the Act of HG § 4–306(b), which lists those situations in which a health care provider "*shall* disclose a medical record without the authorization of a person in interest." (Emphasis supplied.)

This Court's opinion in *Dr. K. v. State Board of Physician Quality Assurance,* 98 Md.App. 103, 632 A.2d 453 (1993), *cert. denied,* 334 Md. 18, 637 A.2d 1191, *cert. denied,* 513 U.S. 817, 115 S.Ct. 75, 130 L.Ed.2d 29 (1994), all but refutes entirely Dr.

---

Assurance], the Board may issue subpoenas and administer oaths in connection with any investigation under this title and any hearings or proceedings before it."

HO § 14–401(g) provided: "The Board may issue subpoenas and administer oaths in connection with any investigation under this section and any hearing or proceeding before it." Since the filing of this appeal, subsection (g) has been redesignated as subsection (h).

Solomon's argument that compliance with the subpoena violates her patients' privacy rights. In *Dr. K.,* the Board issued a subpoena, much like the subpoena in the present case, to obtain a patient's medical records subsequent to allegations that Dr. K. committed misconduct with that patient.

This Court opined that an individual's right to privacy in his or her medical records falls within the ambit of constitutional protection. We held, however, that a patient's "constitutional right to privacy in her medical records ... is outweighed by the State's compelling interest in obtaining those records for the purpose of investigating possible disciplinary action against" a physician. *Id.* at 122, 632 A.2d 453; *see In re Search Warrant (Sealed),* 810 F.2d 67, 71–72 (3d Cir.), *cert.* denied, 483 U.S. 1007, 107 S.Ct. 3233, 97 L.Ed.2d 739 (1987) (stating "[t]he individual privacy interest in the patients' medical records must be balanced against the legitimate interests of the state in securing the information contained therein"); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 572–73, 578 (3d Cir.1980) (identifying factors to consider in balancing employees' privacy interest against state interests in obtaining information contained in the employees' medical records); *Schachter v. Whalen,* 581 F.2d 35, 37 (2d Cir.1978) (holding that the New York State Board for Professional Medical Conduct did not infringe upon patients' constitutional rights when the Board subpoenaed medical records in the course of a disciplinary investigation).

█ In a closely related argument, Dr. Solomon seems to suggest that the physician-patient privilege precludes her from turning patient records over to the Board. We assume (because she does not argue otherwise) that her argument rests on the claimed existence of a testimonial physician-patient privilege. The argument fails in its premise, however, because there is no testimonial physician-patient privilege in Maryland outside of the mental health field. *Butler–Tulio v. Scroggins,* 139 Md.App. 122, 143, 774 A.2d 1209, *cert. denied,* 366 Md. 247, 783 A.2d 221 (2001). As we said in that case, "[c]ommunications made to a physician in his professional

capacity by a patient are neither privileged under the common law of Maryland, nor have they been made so by statute." *Id.* at 135, 774 A.2d 1209.

■ We note that Dr. Solomon's arguments concerning patient privacy and physician-patient privilege are identical to arguments that were squarely rejected by the Supreme Court of Ohio in *State Medical Board of Ohio v. Miller,* 44 Ohio St.3d 136, 541 N.E.2d 602 (1989), a case cited by the Board in its decision in the case *sub judice.* In that case, a physician who was the subject of an investigation by the state medical board moved to quash a subpoena for patient records, on the ground that physician-patient privilege precluded disclosure of the requested records. The court rejected appellant's argument for three reasons: (1) "there existed no physician-patient privilege at common law"; (2) "the opportunity to practice medicine is not an unqualified right"; and (3) the public interest in facilitating a medical board's investigation of alleged physician misconduct "outweighs the interests to be served by invocation of the physician-patient privilege." *Id.* at 140–41, 541 N.E.2d 602. We concur with the Ohio Supreme Court's reasoning and conclusion.

Dr. Solomon contends that the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the federal regulations implementing this Act preclude her from complying with the subpoena.[5] *See* 45 C.F.R. Parts 160, 164. This contention, too, is without merit.

On April 4, 2001, the Board issued its final decision in this case. At that time, the regulations implementing HIPAA were not yet in effect. Thus, Dr. Solomon's argument that HIPAA prevented her compliance with the subpoena is unavailing. In addition, we note that even if the implementing regulations had been in effect at the time, the regulations are not applicable to disclosures of medical records to a licensure

---

5. Congress passed HIPAA in August 1996 in recognition of the importance of protecting the privacy of health information in the midst of the rapid evolution of health information systems. *See* Pub.L. No. 104–191, 110 Stat.1936.

or disciplinary agency, such as the Board. *See* 45 C.F.R. § 164.512(d).

In sum, no federal or state law legally excused Dr. Solomon from complying with the Board's December 2nd subpoena. Consequently, there is no merit to her complaint that the Board could not lawfully rely on her refusal to comply with the subpoena as grounds for revoking her license.[6]

## II.

Dr. Solomon contends that the ALJ abused her discretion in denying Dr. Solomon's request to call a number of witnesses to testify on her behalf, namely: the 19 patients whose medical records the Board had subpoenaed; a retired Administrative Law Judge, John Appel; and a dentist, Michael Baylin. Dr. Solomon proffered that the 19 patients would testify "that they do not wish their confidential medical records be turned over to the Board"; Mr. Appel would opine as an expert that the law did not require Dr. Solomon to comply with the December 2nd subpoena because it was overbroad and therefore invalid; and Dr. Baylin would testify that he had not been punished for failing to comply with a medical records subpoena, which the Board of Dental Examiners had issued during an investigation of him.

An ALJ is permitted to exclude evidence that is incompetent, irrelevant, immaterial, or unduly repetitious. Md.Code (1984, 1999 Repl.Vol.), § 10–213(d) of the State Government Article. We do not disturb such rulings absent an abuse of the ALJ's discretion. *See Maryland State Police v. Zeigler,* 330 Md. 540, 557, 625 A.2d 914 (1993) (stating that "as long as an administrative agency's exercise of discretion does not violate regulations, statutes, common law principles,

---

6. We do not decide in this case whether the Board could properly find that a physician has "fail[ed] to cooperate with a lawful investigation," pursuant to HO § 14–404(a)(33), for refusing to comply with a subpoena that is overbroad or is non-compliant with the statutes governing its issuance.

due process and other constitutional requirements, it is ordinarily unreviewable by the courts").

In this case, the ALJ did not abuse her discretion in excluding the testimony of the 19 patients, Mr. Appel, and Dr. Baylin. The proffered testimony of these witnesses simply was not relevant to the issues before the ALJ whether Dr. Solomon failed to cooperate with an investigation by the Board, and whether she exercised unprofessional conduct in the practice of medicine.

Moreover, there were additional reasons to exclude the witnesses' testimony. As for Dr. Solomon's patients, this Court has made clear that patients have no veto power over subpoenas issued by the Board in the course of investigating a physician. *See Dr. K.,* 98 Md.App. at 120, 632 A.2d 453. As for Mr. Appel, it is the general rule that an expert witness may not opine on questions of law, except for those concerning the law of another jurisdiction, *Franch v. Ankney,* 341 Md. 350, 360, 670 A.2d 951 (1996); there has been no satisfactory reason given to depart from that rule in this case. Finally, Dr. Baylin's testimony was properly excluded because the proceedings conducted by the Board of Dental Examiners against him have absolutely no bearing on whether Dr. Solomon was legally excused from complying with the Board's December 2nd subpoena. The ALJ acted well within her discretion in excluding these witnesses' testimony.

### III.

Dr. Solomon's final challenge goes not to the merits of whether she "fail[ed] to cooperate with a lawful investigation conducted by the Board," but to whether the Board's decision to revoke her license to practice medicine was disproportionate to the offense charged. She argues that the discipline rendered by the Board "was an abuse of discretion and excessive punishment."

In *Maryland Transp. Auth. v. King,* 369 Md. 274, 291, 799 A.2d 1246 (2002), the Court of Appeals made clear that,

[a]s long as an administrative sanction or decision does not exceed the agency's authority, is not unlawful, and is supported by competent, material and substantial evidence, there can be no judicial reversal or modification of the decision based on disproportionality or abuse of discretion unless, under the facts of a particular case, the disproportionality or abuse of discretion was so extreme and egregious that the reviewing court can properly deem the decision to be "arbitrary or capricious."

*Accord Maryland State Bd. of Soc. Work Exam'rs v. Chertkov,* 121 Md.App. 574, 586, 710 A.2d 391 (1998) (holding that a reviewing court does not have the authority to impose its view of the appropriate sanction on a professional disciplinary board, as long as there is substantial evidence in the record to support the sanction).

In the instant case, the Board rejected Dr. Solomon's argument that the "recommended sanction of revocation is contrary to Maryland law because it is too harsh for the offense of failing to cooperate with a lawful Board investigation." By statute, the Board is authorized to reprimand, place on probation, or suspend or revoke a physician's license if that physician violates any of the disciplinary grounds set forth in HO § 14–104(a), one of which, (a)(33), is failure to cooperate with a lawful investigation. That same statute affords the Board broad discretion in selecting the appropriate sanction for professional misconduct. As was its prerogative, the Board selected license revocation as the appropriate sanction. In its final order, the Board explained its rationale for doing so:

The Board has rejected imposing a lesser sanction for the following reasons. Dr. Solomon, citing legal excuses which have no merit whatsoever, has succeeded for over two years in stopping the Board from investigating the quality of her medical practice. If the Board were to now simply suspend her license until she complies with the subpoenas, or to suspend her for a time, the Board would have established a precedent which could be used by any investigated physician. If an investigated physician is practicing medicine in

a truly dangerous manner—or is profiting from fraud, or is abusing patients either sexually or otherwise—that physician may find it profitable or otherwise advantageous to stall, as Dr. Solomon has, safe in the knowledge that it may take the Board years to defeat such diversionary tactics. For such a physician, the prospect of up to two years of continued medical practice may make stalling a viable tactic. Only the prospect that the severe sanction of revocation will be imposed (for longstanding deliberate and unjustified failure to cooperate) will deter unscrupulous physicians from adopting such stalling tactics in an attempt to completely negate the Board's ability to protect patients from the very worst abuses in the very worst cases.

Dr. Solomon, of course, has gone beyond stalling and has outright refused to cooperate. Any lesser sanction than revocation would send a message to other Maryland licensed physicians that they have veto power over a Board investigation of their medical practices and that, by refusing to comply with Board subpoenas for medical records, they can avoid any potential Board corrective or disciplinary action resulting from a Board investigation. To do this would eviscerate the Board's ability to protect citizens of the State of Maryland.

The Board's action did not exceed its authority, was not unlawful, and was supported by competent, material, and substantial evidence. Moreover, even assuming *arguendo* that revocation of Dr. Solomon's license was disproportionate to her misconduct, it surely was not so disproportionate as to be "arbitrary or capricious." We therefore shall not disturb the Board's decision to sanction Dr. Solomon as it did. *King,* 369 Md. at 291, 799 A.2d 1246; *cf. Anderson v. Board of Med. Exam'rs,* 95 Or.App. 676, 681, 770 P.2d 947, 950 (1989) (rejecting a physician's contention that "she should not have been subjected to sanctions or at least not [license] revocation" for failing to cooperate with a medical board investigation by refusing to attend an "informal interview" conducted by the board).

Finally, Dr. Solomon seems to argue that the Board imposed upon her "a forfeiture of [a] valuable property right," *i.e.*, her medical license, without due process of law, because the Board's final order was not

accompanied by a statement that explains (1) precisely what (written or unwritten) law, procedure, rule or regulation has been violated by Dr. Solomon; (2) why the Board has decided against imposing any of the other sanctions that it has discretion to impose, and (3) why, under the circumstances, the punishment 'fits' the misconduct.

Our response to this less than developed argument is simply that the Board, in a written statement, both identified Dr. Solomon's misconduct and fully explained its decision to revoke Dr. Solomon's medical license.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**