# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 5, 2006 Session

## FRANK H. McNIEL v. SUSAN R. COOPER

**Appeal from the Chancery Court for Davidson County**
**No. 04-1748-IV     Richard Dinkins, Chancellor**

---

**No. M2005-01206-COA-R3-CV - Filed on March 30, 3007**

---

This appeal involves the authority of the Tennessee Board of Medical Examiners to review the medical records of a physician's patients. After the Board requested access to his patients' records in accordance with Tenn. Code Ann. § 63-1-117 (2004), the physician filed a declaratory judgment action in the Chancery Court for Davidson County challenging the constitutionality of the statute. The physician asserted that the statutory procedure for gaining access to medical records amounted to an unreasonable search and seizure because it failed to provide him with pre-enforcement judicial review of the reasonableness of the Board's request. He also claimed that the statute's notice provisions violated due process. Both the physician and the Board filed motions for summary judgment. The trial court concluded that the physician received adequate notice of the purpose of the request for medical records. It also determined that Tenn. Code Ann. § 63-1-117(a)(3), the portion of the statute authorizing disciplinary sanctions against physicians who willfully fail to produce requested records, was unconstitutional and awarded the physician $20,916 in attorney's fees. The Board perfected this appeal. We concur with the trial court's conclusion that the physician received adequate notice of the reasons for the request for medical records. However, we have determined that physicians in Tennessee have no reasonable expectation that they can shield their patients' records from the Board's regulatory oversight and that the Board may discipline physicians who willfully refuse to comply with lawful requests for patient records that comply with Tenn. Code Ann. § 63-1-117.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Paul G. Summers, Attorney General and Reporter, and Sue A. Sheldon, Senior Counsel, for the appellant, Susan R. Cooper, Commissioner of Health.[1]

Frank J. Scanlon, Nashville, Tennessee, for the appellee, Frank H. McNiel.

---

[1]Commissioner Susan R. Cooper has been substituted as a party in the place of Commissioner Kenneth S. Robinson in accordance with Tenn. R. App. P. 19(c).

**OPINION**

**I.**

The Tennessee Board of Medical Examiners (Board) is responsible for licensing and regulating all physicians in Tennessee.[2] The Board receives administrative support from the Division of Health Related Boards (Division) in the Tennessee Department of Health (Department).[3] The Division has concurrent jurisdiction with the Board to enforce compliance with the laws regulating the practice of medicine in Tennessee,[4] and the Division's duties include investigating complaints against physicians.[5]

In 2003, the Tennessee General Assembly broadened the scope of the Division's investigatory power by authorizing the Division to obtain patient records from health care providers simply by presenting a written request for the records.[6] As amended, Tenn. Code Ann. § 63-1-117 required that the request be accompanied by a release signed by the patient or the patient's representative.[7] The statute also authorized the Division to obtain patient records without a signed release. In that circumstance, the statute required that the Division's written request (1) specifically identify the records sought by patient name,[8] (2) be made in good faith pursuant to the Department's responsibility for oversight of the health care system,[9] and (3) contain a signed certification by an "independent reviewer" that the request is being made in good faith in response to a verified complaint and after due consideration of whether obtaining an individual release is necessary or feasible.[10] Tenn. Code Ann. § 63-1-117(a)(3) also provided that willful failure to comply with a lawful request for records was a ground for disciplinary action against a license holder.

In March 2004, an investigator employed by the Division presented Dr. Frank McNiel with written requests for records of thirty of his patients. Dr. McNiel is a family practitioner in Knoxville who specializes in pain management. The investigator provided Dr. McNiel with copies of written

---

[2]Tenn. Code Ann. § 63-6-101 (2004).

[3]Tenn. Code Ann. § 63-6-101(b).

[4]Tenn. Code Ann. § 63-1-122 (2004).

[5]Tenn. Code Ann. § 63-1-115 (2004).

[6]Act of June 4, 2003, ch. 281, 2003 Tenn. Pub. Acts 471, codified at Tenn. Code Ann. § 63-1-117 (2004).

[7]Tenn. Code Ann. § 63-1-117(a)(1)(B).

[8]Tenn. Code Ann. § 63-1-117(a)(1)(B)(i).

[9]Tenn. Code Ann. § 63-1-117(a)(1)(B)(ii).

[10]Tenn. Code Ann. § 63-1-117(a)(1)(B)(iii).

releases signed by four of his patients whose records were being sought. With regard to the remaining twenty-six patients, the investigator provided Dr. McNiel with the identifying information and independent certification required by Tenn. Code Ann. § 63-1-117(a)(1)(B). The investigator also provided Dr. McNiel with a copy of Tenn. Code Ann. § 63-1-117 and a written warning that failure to produce the requested records could result in "possible criminal, civil penalty, and/or licensure disciplinary sanctions."[11]

Dr. McNiel declined to produce the patient records requested by the Division. On May 25, 2004, his lawyer sent a letter to the Division asserting that Tenn. Code Ann. § 63-1-117 was unconstitutional.[12] Dr. McNiel also provided the Division with the records of two of the four patients who had signed releases. He declined to turn over the records of the other two patients – a husband and wife – because he questioned the validity of the signatures on the release.

On June 11, 2004, Dr. McNiel filed a complaint in the Chancery Court for Davidson County seeking declaratory and injunctive relief.[13] He asserted that Tenn. Code Ann. § 63-1-117 was unconstitutional, and he requested that the Department be enjoined from requiring him to produce the requested records. Dr. McNiel, characterizing the written request for records as an "investigative subpoena," argued that the statute was unconstitutional because (1) it did not require the Department to inform the health care provider of the nature of its investigation and (2) it did not provide for pre-enforcement judicial review of the reasonableness of the request for patient records.

Three days later, on June 14, 2004, the Division responded to the May 25, 2004 letter from Dr. McNiel's lawyer. The Division demanded that Dr. McNiel produce the requested records by June 30, 2004 and warned him that the matter would be turned over to the Office of General Counsel for disciplinary proceedings if he failed to comply. This letter prompted Dr. McNiel to file an amended complaint on June 24, 2004, as well as a motion to enjoin the Department from instituting disciplinary proceedings against him under Tenn. Code Ann. § 63-1-117(a)(3). The record contains no indication that the trial court enjoined the Department from commencing a disciplinary proceeding against Dr. McNiel for refusing to turn over patients' records in accordance with an otherwise valid written request.

---

[11]Tenn. Code Ann. § 63-1-117 does not authorize criminal penalties. The Division has conceded as much, but it has never explained why Dr. McNiel was threatened with criminal penalties. The United States Supreme Court and the Tennessee Supreme Court have stated explicitly that "civil investigative authority will not permit the government to expand its criminal discovery powers." *State Dept. of Revenue v. Moore*, 722 S.W.2d 367, 373 (Tenn. 1986).

[12]Meanwhile, Tenn. Code Ann. § 63-1-117 had been revised again. Act of April 15, 2004, ch. 575, 2004 Tenn. Pub. Acts 1380. These revisions have no effect on the matters in this case, and our citations will continue to reference the statute as it existed when Dr. McNiel was originally served with the Division's request for records.

[13]Although the Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-101 through -325 (2005) applies to proceedings against licensed professionals, it is not necessary to exhaust administrative remedies before petitioning the courts regarding the constitutional validity of a rule or statute. *Metro. Gov't v. State Bd. of Equalization*, No. 88-25-II, 1988 WL 69519, at *4 (Tenn. Ct. App. July 8, 1988) (No Tenn. R. App. P. 11 application filed).

Both Dr. McNiel and the Department filed motions for summary judgment on August 18, 2004. Unfortunately, the Department failed to state the grounds for relief in its motion.[14] Based on the exhibits accompanying the Department's motion, we deduce that the Department was arguing (1) that the Uniform Administrative Procedures Act provided Dr. McNiel with appropriate opportunities for judicial review before imposition of the sanctions authorized by Tenn. Code Ann. § 63-1-117(a)(3) and (2) that the procedure for obtaining patient records for regulatory purposes complied with the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Dr. McNiel's motion, while terse, states that Tenn. Code Ann. § 63-1-117 is unconstitutional on its face because it violates his right to be protected from unreasonable searches and seizures under both the federal and state constitutions.

The trial court filed a memorandum and order on December 20, 2004. The court determined that Dr. McNiel had received adequate notice regarding the existence of a verified complaint against him and the records being sought. However, the court also determined that Tenn. Code Ann. § 63-1-117(a)(3) unconstitutionally coerced physicians into complying with requests for records by forcing them to run the risk of discipline if they refused to turn over the requested records. The court stated that this "coercion" was "contrary to the constitutional principles . . . that a judicial determination of reasonableness of the demand be made prior to the enforcement and that there be no sanction for seeking such determination."

Accordingly, the trial court struck down Tenn. Code Ann. § 63-1-117(a)(3) that empowered the Department to commence disciplinary proceeds or to seek civil penalties against health care providers who willfully disregard a lawful request to produce medical records. The court also ordered the Department to place the following notice on any future Tenn. Code Ann. § 63-1-117 demands:

> NOTE: Tennessee law does not currently allow the Health Related
> Boards to take disciplinary action and/or assess civil penalties against
> a licensed health care provider who willfully disregards a lawful
> Authorization for Release of Records issued by the Department of
> Health.

The trial court also awarded Dr. McNiel $20,916 in attorney's fees. The Department perfected this appeal.[15] In accordance with Tenn. R. App. P. 13(a), Dr. McNiel takes issue with the trial court's

---

[14]Tenn. R. Civ. P. 7.02(1) requires motions to "state with particularity the grounds therefor." In this case as in other cases, the Attorney General and Reporter has ignored the rule and has instead set out the basis for its motion in a separate memorandum of law which is not part of the record on appeal. Both the Tennessee Supreme Court and this court have admonished the Attorney General about this practice – apparently with little effect. *See, e.g.*, *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 709 n.2 (Tenn. 2003); *Utley v. Tenn. Dep't of Corr.*, 118 S.W.3d 705, 711 n.8 (Tenn. Ct. App. 2003); *Hickman v. Tenn. Bd. of Paroles*, 78 S.W.3d 285, 287 (Tenn. Ct. App. 2001); *Pendleton v. Mills*, 73 S.W.3d 115, 119 n. 7 (Tenn. Ct. App. 2001); *Robinson v. Clement*, 65 S.W.3d 632, 635 n. 2 (Tenn. Ct. App. 2001).

[15]In addition to seeking appellate review of the trial court's decision, the Department requested that the Tennessee General Assembly revise Tenn. Code Ann. § 63-1-117(a) to address the trial court's opinion. The General

(continued...)

-4-

conclusion that the Division provided him with adequate notice of the purpose of its request for access to his patients' records.

## II.
### THE STANDARD OF REVIEW

There are no material factual disputes with regard to the issues raised on this appeal. These issues involve the interpretation of statutes and the construction and application of constitutional provisions. These sorts of issues present questions of law. *Tidwell v. City of Memphis*, 193 S.W.3d 555, 559 (Tenn. 2006) (the interpretation of a statute is a question of law); *Bredesen v. Tenn. Judicial Selection Comm'n*, ___ S.W.3d ___, ___, 2007 WL 519270, at \*4 (Tenn. 2007) (the construction of a statute or a constitutional provision is a question of law). A trial court's decisions on legal questions are not entitled to a presumption of correctness on appeal. *Stewart v. Sewell*, ___ S.W.3d ___, ___, 2007 WL 609001, at \*5 (Tenn. 2007); *State v. Burns*, 205 S.W.3d 412, 414 (Tenn. 2006). Accordingly, this court must review the questions de novo, and we must reach our own conclusions independent of the decisions reached by the trial court.

## III.
### THE LICENSING AGENCY'S RIGHT OF ACCESS TO PATIENTS' MEDICAL RECORDS

We examine first the right of the Board and Division to gain access to a patient's medical records in the context of an investigation of alleged wrong-doing by the patient's physician. This issue requires balancing (1) patients' expectations that their medical records will not be divulged without their consent, (2) physicians' interests in practicing their profession free from unreasonable governmental interference, and (3) the State's compelling interest in protecting its citizens by regulating the practice of medicine.

We begin with the most important of the competing interests. A patient's expectation that his or her medical records will remain private has constitutional, statutory, and decisional protection in Tennessee. Patients have a constitutionally protected interest in avoiding the disclosure of private, personal information, *Whalen v. Roe*, 429 U.S. 589, 599-600, 97 S. Ct. 869, 876 (1977), and their medical records fall within the sphere of constitutionally protected private information. *In re Search Warrant (Sealed)*, 810 F.2d 67, 71 (3d Cir. 1987); *Dr. K. v. State Bd. of Physician Quality Assurance*, 632 A.2d 453, 459 (Md. Ct. Spec. App. 1993). The Tennessee General Assembly, recognizing the sensitivity of medical records, has enacted statutes limiting their disclosure. *See, e.g.*, Tenn. Code Ann. § 63-2-101(b)(1) (Supp. 2006); Tenn. Code Ann. §§ 68-11-1502, -1503 (2006). While Tennessee has never recognized a common-law physician–patient privilege, the Tennessee Supreme Court has recognized the existence of an implied covenant of confidentiality

---

[15](...continued)
Assembly amended Tenn. Code Ann. § 63-1-117(a) in 2005. Act of April 18, 2005, ch. 118, 2005 Tenn. Pub. Acts 200. These amendments have no direct bearing on this case and do not render this appeal moot because of the trial court's award of attorney's fees.

between physicians and their patients. *Givens v. Mulliken ex rel. McElwaney*, 75 S.W.3d 383, 407 (Tenn. 2002).

A patient's privacy interest is not absolute. The United States Supreme Court has held that the disclosure of patient prescription records as part of a state government's oversight of the dispensing and sale of controlled substances was not an unwarranted disclosure of private information. *Whalen v. Roe*, 429 U.S. at 600-04, 97 S. Ct. at 877-79. Similarly, the Tennessee Supreme Court has held that the implied covenant of confidentiality is not enforceable if it contravenes public policy and that the covenant can be voided when its enforcement would compromise the needs of society. *Alsip v. Johnson City Med. Ctr.*, 197 S.W.3d 722, 726 (Tenn. 2006).

A physician also has a constitutionally protected liberty and property interest in practicing his or her profession free from unreasonable interference by the government. *See Greene v. McElroy*, 360 U.S. 474, 492, 79 S. Ct. 1400, 1411 (1959); *Schware v. Bd. of Bar Exam'rs*, 353 U.S. 232, 238-39, 77 S.Ct. 752, 756 (1957); *Humenansky v. Minn. Bd. of Med. Exam'rs*, 525 N.W.2d 559, 566 (Minn. Ct. App. 1994). This right, however, is not unqualified, *People ex rel. Sherman v. Cyrns*, 786 N.E.2d 139, 160 (Ill. 2003); *State Med. Bd. v. Miller*, 541 N.E.2d 602, 605 (Ohio 1989), and it has been characterized as a personal privilege that is subject to reasonable restriction and regulation by the state licensing authorities. *Sloan v. Metro. Health Council of Indianapolis, Inc.*, 516 N.E.2d 1104, 1107 (Ind. Ct. App. 1987); *Lap v. Axelrod*, 467 N.Y.S.2d 920, 922 (App. Div. 1983); *State Med. Bd. v. Miller*, 541 N.E.2d at 605-06; *Gandhi v. State Med. Examining Bd.*, 483 N.W.2d 295, 300 (Wis. Ct. App. 1992).

For their part, the states have a compelling interest in exercising their police power to protect the public health and safety and other interests by establishing standards for licensing professionals and by regulating the practice of professions within their borders. *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792, 95 S. Ct. 2004, 2016 (1975); *see also Davis v. Allen*, 43 Tenn. App. 278, 283, 307 S.W.2d 800, 802-03 (1957).[16] Thus, the courts have, without fail, acknowledged that states have the power to license physicians practicing within their borders and to take all appropriate steps to ensure that practicing physicians meet professional standards. *Patients of Dr. Barbara Solomon v. Bd. of Physician Quality Assurance*, 85 F. Supp. 2d 545, 548 (D. Md. 1999); *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 978 P.2d 922, 927 (Kan. 1999); *Atkins v. Guest*, 607 N.Y.S.2d 655, 657 (App. Div. 1994); *Gandhi v. State Med. Examining Bd.*, 483 N.W.2d at 300.

Empowering state licensing boards to investigate complaints against licensed professionals is an integral part of the oversight of professional practice. State boards charged with regulating and disciplining licensed professionals should not be barred from conducting thorough investigations into allegations of unprofessional conduct. *Jane Doe v. Md. Bd. of Social Work Exam'rs*, 862 A.2d 996, 1007-08 (Md. 2004). Thus, any limitations on a licensing board's statutory power to conduct investigations and to obtain information from its licensees must emanate from the requirements and

---

[16] *See also People ex rel. Sherman v. Cryns*, 786 N.E.2d at 160; *Humenansky v. Minn. Bd. of Med. Exam'rs*, 525 N.W.2d at 566-67.

standards established to protect constitutional, statutory, or common-law rights and privileges. *State ex rel. Hoover v. Berger*, 483 S.E.2d 12, 17 (W. Va. 1996).

A thorough examination of a complaint against a physician may, and invariably does, require the licensing board to examine the medical records of the physician's patients. Many times, it is neither prudent nor possible to obtain the patient's consent prior to the examination. In these circumstances, the patient's privacy interests must be balanced with the public's interest in investigating the conduct of licensed physicians. *McMaster v. Iowa Bd. of Psychology Exam'rs*, 509 N.W.2d 754, 759 (Iowa 1993); *Atkins v. Guest*, 607 N.Y.S.2d at 657; *Solomon v. State Bd. of Physician Quality Assurance*, 845 A.2d 47, 57 (Md. Ct. Spec. App. 2003); *State v. Antill*, 197 N.E.2d 548, 551 (Ohio 1964). This delicate task is accomplished by considering, among other things, (1) the government's reason for seeking access to the records, (2) the basis for the government's authority to examine the records, (3) the government's need for the information, (4) the type of records being requested, (5) the information the records contain, (6) the potential harm to the patient if the information is released without the patient's consent, and (7) the adequacy of the safeguards to prevent unauthorized release of the information in the records. *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 598 (3d Cir. 1980); *Dr. K. v. State Bd. of Physician Quality Assurance*, 632 A.2d at 459; *see also Bd. of Med. Exam'rs v. Duhon*, 867 P.2d 20, 24-25 (Colo. Ct. App. 1993) *superseded by statute*, Colo Rev. Stat. 12-36-118(4)(a) (West, Westlaw through 2006 1st Sess. of 65th Gen. Assembly), *as recognized in State Bd. of Med. Exam'rs v. Khan*, 984 P.2d 670, 673-74 (Colo. 1999); *Feathers v. W. Va. Bd. of Med.*, 562 S.E.2d 488, 493 (W. Va. 2001).

The scope of a licensing agency's request for records must be appropriately limited to prevent the release of unnecessary information. *See Bearman v. Superior Court*, 11 Cal. Rptr. 3d 644, 648 (Ct. App. 2004). This can be accomplished by a minimal showing that the complaint received by the licensing agency reasonably justifies the request, *Levin v. Murawski*, 449 N.E.2d 730, 733-34 (N.Y. 1983), and that the requested records are necessary as evidence in the investigation of the complaint.

Maintaining the confidentiality of patient records is for the protection of the patient, not the physician. *Nach v. Dep't of Prof'l Regulation*, 528 So. 2d 908, 909 (Fla. Dist. Ct. App. 1988). Accordingly, most of the jurisdictions that have addressed the question have concluded that healthcare providers should not be permitted to frustrate a legitimate investigation into their professional conduct by asserting the physician–patient privilege. *Colorado Bd. of Psychologist Exam'rs v. Dr. I.W.*, 140 P.3d 186, 188 (Colo. Ct. App. 2006); *Solomon v. State Bd. of Physician Quality Assurance*, 845 A.2d at 548 ; *In re Application to Quash a Subpoena Duces Tecum in Grand Jury*, 437 N.E.2d 1118, 1120 (N.Y. 1982); *Atkins v. Guest*, 607 N.Y.S.2d at 657; *State Med. Bd. v. Miller*, 541 N.E.2d at 606; *Biddle v. Warren Gen. Hosp.*, 715 N.E.2d 518, 524 (Ohio 1999); *In re Bd. of Med. Review Investigation*, 463 A.2d 1373, 1376 (R.I. 1983).[17] These courts have concluded

---

[17]Many of the courts reaching this conclusion have pointed to statutes protecting the confidentiality of patient records in the hand of the licensing authority. *Doe v. Dep't of Health*, ___ So. 2d ___, ___, 2006 WL 3780681, at *1 (Fla. Dist. Ct. App. Dec. 27, 2006); *Nach v. Dep't of Prof'l Regulation*, 528 So. 2d at 909; *Jane Doe v. Md. Bd. of Social Work Exam'rs*, 862 A.2d at 1008; *State Med. Bd. v. Miller*, 541 N.E.2d at 606.

that permitting licensing boards to obtain medical records does not violate the patient's privacy rights,[18] generally accepted professional standards,[19] HIPAA,[20] ERISA,[21] or the Fifth Amendment.[22]

The Division and the Board have concurrent authority to enforce compliance with the laws regulating the practice of the medicine in Tennessee in order to prevent unlawful practices within this state.[23] Included within this power is the authority to conduct investigations into complaints filed against physicians[24] and to discipline physicians when appropriate.[25] To assure that good cause for an investigation exists, the Division and the Board may commence an investigation only upon the receipt of a complaint signed by a licensed member of the profession[26] or a complaint that has been reviewed and found warranting investigation either by a screening panel of physicians[27] or by an independent reviewer who must also be a licensed physician.[28] When determining whether a complaint warrants further investigation, the independent reviewer must (1) consider the nature of the complaint and (2) balance the potential harm to the physician's practice with the interests of the public.[29] Any information, including patient records, obtained during an investigation remains confidential until it is introduced in the disciplinary proceeding against the physician.[30]

We conclude that the Division and the Board have statutory authority to license and oversee the professional conduct of physicians practicing in Tennessee. An integral part of this authority is

---

[18] *In re Search Warrant (Sealed)*, 810 F.2d 67, 72-73 (3d Cir. 1987); *Schachter v. Whalen*, 581 F.2d 35, 37 (2d Cir. 1978); *Patients of Dr. Barbara Solomon v. Bd. of Physician Quality Assurance*, 85 F. Supp. 2d at 548.

[19] *Colorado Bd. of Psychologist Exam'rs v. Dr. I.W.*, 140 P.3d at 188. In fact, physicians have an ethical obligation to disclose patient medical records in response to a lawful request for them. Am. Med. Ass'n Council on Ethical and Judicial Affairs, Code of Medical Ethics § 7.02, at 114 (1998-99 ed.).

[20] *Solomon v. State Bd. of Physician Quality Assurance*, 845 A.2d at 57; *Chapman v. Health & Hosps. Corps.*, 796 N.Y.S.2d 876, 936-37 (N.Y. Sup. Ct. 2005).

[21] *State Bd. of Registration for Healing Arts v. Fallon*, 41 S.W.3d 474, 478 (Mo. 2001).

[22] *Nach v. Dep't of Prof'l Regulation*, 528 So. 2d at 909.

[23] Tenn. Code Ann. § 63-1-122 (2004).

[24] Tenn. Code Ann. § 63-6-213 (2004).

[25] Tenn. Code Ann. §§ 63-1-120(a), 63-6-214(a) (2004)

[26] Tenn. Code Ann. § 63-1-117(a)(1)(B)(iii)(b).

[27] Tenn. Code Ann. §§ 63-1-138, 63-6-214(i) (Supp. 2005).

[28] Tenn. Code Ann. § 63-1-117(a)(1)(B)(iii)(a).

[29] Tenn. Code Ann. § 63-1-117(a)(1)(B)(iii)(c).

[30] Tenn. Code Ann. § 63-1-117(b)(2); Tenn. Code Ann. § 63-6-214(h) (Supp. 2005).

the power to investigate complaints against physicians once it is determined that the complaint merits further inquiry. When either the Board or the Division determines that an investigation is warranted, they have the authority to direct the physician to release patient records containing information relevant to the complaint. Once the Board or the Division obtains the records, they must take steps to assure that the records remain confidential until they are used in a disciplinary proceeding against the physician.

These statutory procedures, when followed, protect the patient's reasonable expectation that his or her medical records will not be released improperly. They assure that the Board and the Division will receive only those records that are necessarily related to the complaint and that these records will remain confidential until they are introduced at a disciplinary proceeding against the physician. Physicians who comply with the Division's or Board's request for patient records do not violate the implied covenant of confidentiality because they are required to honor a proper request for patient records.[31] Therefore, requiring a physician to comply with either the Division's or the Board's request for patient records does not violate any of the patient's privacy interests.

## IV.
### THE VALIDITY OF TENN. CODE ANN. § 63-1-117(a)(3)

The Board and the Division also take issue with the trial court's conclusion that Tenn. Code Ann. § 63-1-117(a)(3) was unconstitutionally coercive. They concede that due process requires providing licensees like Dr. McNiel an opportunity to seek judicial review of an administrative request for information before they can be disciplined for refusing to comply with the request. However, they insist that Tennessee's Uniform Administrative Procedures Act provides licensees like Dr. McNiel with an appropriate opportunity for judicial review. We agree.

Tennessee's appellate courts have not heretofore been called upon the construe and apply Tenn. Code Ann. § 63-1-117. However, approximately twenty-five years ago, the Tennessee Supreme Court examined a similar statute that was challenged on several constitutional grounds. *State ex rel. Shriver v. Leech*, 612 S.W.2d 454 (Tenn. 1981). The court's reasoning in that case provides direction for our consideration of the challenge to Tenn. Code Ann. § 63-1-117(a)(3).

Tenn. Code Ann. § 8-6-402(a) (2002) empowers the Attorney General and Reporter to issue civil investigative demands (CID) compelling persons to give testimony or to produce documents in any proceeding in which the state is a party litigant and may become a party litigant. Persons failing to comply with a CID are subject to contempt sanctions,[32] and the information obtained through a CID remains confidential until used in court.[33]

---

[31] *Givens v. Mullikin ex rel. McElwaney*, 75 S.W.3d at 408.

[32] Tenn. Code Ann. §§ 8-6-404, -405 (2002).

[33] Tenn. Code Ann. § 8-6-407 (2002).

In *State ex rel. Shriver v. Leech*, a recipient of a CID challenged the constitutionality of Tenn. Code Ann. § 8-6-402(a) on the grounds that it violated the Due Process and Equal Protection Clauses of both the state and federal constitutions. He argued that the CID gave the State an unfair advantage with regard to discovery and that it did not require the Attorney General to first obtain judicial approval for the CID's issuance. The Tennessee Supreme Court held that using a CID did not give the State an unfair advantage. *State ex rel. Shriver v. Leech*, 612 S.W.2d at 457-58. The Court, noting that the Attorney General was required to request the court to impose sanctions for failure to comply with a CID, also held that the CID procedure provided a sufficient opportunity to obtain judicial review of the issuance of the CID. The Court noted that

> If the subpoenaed party is of the opinion the requests contained in the demand are unreasonable, he can refuse to comply with the demand and raise the issue as a defense to any action brought by the attorney general and reporter to enforce compliance.

*State ex rel. Shriver v. Leech*, 612 S.W.2d at 459.

In this case, Dr. McNiel and the trial court have apparently decided that the only sort of administrative fact-gathering procedures that will pass constitutional muster are those that resemble the CID process approved by the Tennessee Supreme Court in *State ex. rel. Shriver v. Leech*. We have determined that both Dr. McNiel and the trial court have read too much into *State ex. rel. Shriver v. Leech*. As we construe the decision, any regulatory fact-gathering process that requires licensees to provide records to a licensing board will be upheld as long as the licensee from whom the records are requested has an opportunity to obtain judicial review of the reasonableness of the request before the imposition of sanctions for failing to comply with the request.

Requests for records under Tenn. Code Ann. § 63-1-117 are not self-enforcing. If a physician who receives a request declines to comply, the only avenue available to the agency seeking the records is to begin the administrative process to discipline the physician for failing to comply with the request. If the physician is charged with engaging in unprofessional conduct by failing to respond to a lawful request for records, he or she may request a contested case hearing. To prevail at this hearing, the Division must present substantial and material evidence establishing that the request for records was "lawful" and that the recipient's refusal to provide the requested records was "willful." Tenn. Code Ann. § 63-1-117(a)(3)(B). For a request to be "lawful," it must comply not only with all the requirements of Tenn. Code Ann. § 63-1-117 but also with all other applicable constitutional and legal requirements.

The contested case proceeding affords the physician with an opportunity for discovery. The contested case hearing also affords the physician with an opportunity to present evidence and cross-examine the Division's witnesses regarding the legality of the request for information. Following the hearing, the administrative law judge and the Board will determine, based on the evidence, whether the physician willfully disregarded a lawful request for information and, if so, what the physician's punishment should be. If the administrative law judge and the Board find against the

-10-

physician, the physician may obtain judicial review by filing a petition for review in accordance with Tenn. Code Ann. § 4-5-322 (2005). Only after the reviewing court or courts uphold the decision of the Board can the physician be punished and compelled to turn over the requested records.

The judicial review of the Board's decision following a contested case proceeding serves essentially the same purpose as the judicial review procedure approved in *State ex rel. Shriver v. Leech*. The Division must commence a formal administrative proceeding to enforce its request for records, and the physician is not required to comply with the request until both the Board and the courts determine that the request was lawful. The Division has the burden of proof, and the physician may raise the unlawfulness of the request as a defense. Judicial review of an administrative decision upholding the request provides the same sort of judicial review that Tenn. Code Ann. § 8-6-404 provides for CIDs issued by the Attorney General and Reporter. Accordingly, *State ex rel. Shriver v. Leech* provides no support for the trial court's conclusion that Tenn. Code Ann. § 63-1-117(a)(3) is unconstitutional.

In addition, a contested case proceeding initiated by the Board is not the only avenue available for judicial review of the lawfulness of a request for records under Tenn. Code Ann. § 63-1-117. Like the recipient of the CID in *State ex rel. Shriver v. Leech*, a physician who receives a request for records may file a petition in the nature of quo warranto or a declaratory judgment under Tenn. Code Ann. § 29-14-103 (2000). *See State ex rel. Shriver v. Leech*, 612 S.W.2d at 455. The physician may also petition either the Division or the Board for a declaratory order regarding the lawfulness of the request for records.[34] In response to that petition, the Division or the Board must convene a contested case hearing or refuse to issue the declaratory order. If the Division or the Board convenes a contested case hearing, its decision is judicially reviewable under Tenn. Code Ann. § 4-5-322. If the Division or the Board decline to issue a declaratory order, the physician may file a petition for declaratory judgment in the Chancery Court for Davidson County in accordance with Tenn. Code Ann. § 4-5-225 (2005).

While the trial court found that Tenn. Code Ann. § 63-1-117(a)(3) was inappropriately coercive, we find no constitutional infirmity in a statute that permits a licensing board to discipline a licensee who willfully refuses to comply with a lawful request for records. Many other states have statutes similar to Tenn. Code Ann. § 63-1-117(a)(3).[35] Without these disciplinary sanctions, a licensing board's investigation could easily be thwarted by the licensee. *Anderson v. Bd. of Med. Exam'rs*, 770 P.2d 947, 950 (Or. Ct. App. 1989); *Dr. K. v. State Bd. of Physician Quality Assurance*, 632 A.2d at 461-62. Licensees who choose not to comply with a licensing board's lawful

---

[34]Tenn. Code Ann. § 4-5-223(a) provides that "[a]ny affected person may petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order with the primary jurisdiction of the agency."

[35]*See, e.g.*, Ala. Code 34-24-361(c), (d) (2006 Supp.); Ga. Code Ann. §§ 43-1-19(a)(8), 43-34-37(a)(10) (2005); Ga. Comp. R. & Regs. 360-3-02(11) (2007); Kan. Stat. Ann. § 65-1517(l)(p) (2002); La. Rev. Stat. Ann. § 37:776(A)(27) (2007 Supp.); Md. Code Ann., Health Occ. § 14-404(a)(33) (2005); N.Y. Educ Law § 6530(15) (McKinney 2001); Ohio Rev. Code Ann. § 4731.22(B)(34) (West 2006 Supp.); Or. Rev. Stat. Ann. § 677.190(23) (2005).

investigation should suffer the consequences of their unsuccessful challenges to appropriate requests for information. *Abbott v. Kan. Bd. of Exam'rs in Optometry*, 1 P.3d 318, 323 (Kan. 2000). Thus, the courts have consistently upheld disciplinary actions taken against licensees who have willfully failed to cooperate with a licensing agency's request for information. *Abbott v. Kan. Bd. of Exam'rs in Optometry*, 1 P.3d at 323; *Parrish v. Ky. Bd. of Med. Licensure*, 145 S.W.3d 401, 410 (Ky. Ct. App. 2004); *In re Shiplov*, 945 So. 2d 52, 62 (La. Ct. App. 2006); *Solomon v. State Bd. of Physician Quality Assurance*, 845 A.2d at 58-60; *In re Ostad*, 766 N.Y.S.2d 441, 444 (App. Div. 2003); *Anderson v. Bd. of Med. Exam'rs*, 770 P.2d at 950.

The Board and the Division share the responsibility to oversee the practice of medicine in Tennessee to protect the health and safety of Tennessee's residents. Neither the Board nor the Division will be able to carry out this responsibility if their investigations into complaints filed against physicians can be frustrated either by physicians or by patients who have been influenced by their physician. The procedure available to the Board and the Division to obtain medical records contains sufficient safeguards to assure that the Board or the Division has good cause to examine the records and that the records being sought are necessary to enable the Board or Division to investigate the complaint. Therefore, we have concluded that the procedure mandated by the Tennessee General Assembly for obtaining patient records appropriately balances the patients' privacy interests, the physicians' interest in practicing medicine free from unreasonable governmental interference, and the State's compelling interest in protecting the health and safety of its citizens.

## V.
### ADEQUACY OF THE NOTICE REGARDING THE PURPOSE OF THE REQUEST FOR RECORDS

For his part, Dr. McNiel takes issue with the trial court's conclusion that he received adequate notice regarding the nature of the Division's investigation. He insists that the Division should have informed him of the specific purpose of the investigation and that he was unable to determine the reasonableness of the request for records without this specific information. We have determined that the documents provided to Dr. McNiel upon the delivery of the Division's request for medical records provided him with sufficient information.

Physicians upon whom requests for records are served have a statutory right to be provided with certain basic information. A release signed by their patient is alone sufficient. Tenn. Code Ann. § 63-1-117(a)(1)(B). Thus, when the Division has a properly executed release, it is only required to present the physician with a copy of the release. When the Division has a release signed by the patient, it is not required to provide the physician with any additional information with regard to its reasons for seeking access to the patient's records.

If the Division has not obtained a release from the patient, it is still entitled to obtain the records as long as the physician from whom the records are requested receives the information required by statute. In the circumstances like those involved in this case, the physician is statutorily entitled to a written request that satisfies three requirements. First, the written request must

specifically identify the records to be made available by patient name.[36] Second, the request must be made by an authorized investigator representing the Division in the discharge of its responsibility for oversight of the health care system.[37] Third, the written request must be accompanied by a certificate by an independent physician stating that he or she has reviewed the necessary information and has determined that the request is made in good faith in response to a verified complaint and that the requested record is necessary to resolve the complaint.[38] To make this certification, the independent physician must take into account, among other things, the nature of the complaint and the potential harm to the provider or the provider's practice as compared to the public health, safety and welfare issues involved.[39]

In this case, the Division's investigator provided Dr. McNiel with (1) releases of four of his patients, (2) written requests for records specifically naming all the patients whose records were being requested, (3) the certification of the independent physician required by Tenn. Code Ann. § 63-1-117(a)(1)(B)(iii)(a), and (4) a copy of Tenn. Code Ann. § 63-1-117. Thus, there is no question that the Division provided Dr. McNiel with all the information he was entitled to by statute.

Dr. McNiel contends that he is entitled to more information than Tenn. Code Ann. § 63-1-117 requires. Relying on *State ex rel. Shriver v. Leech*, he insists that he is entitled to be informed of the specific purpose of the investigation. He argues that he has a constitutionally protected right to refuse unreasonable and irrelevant investigative demands and that he will be unable to determine the reasonableness and relevancy of an investigative demand without being provided information regarding the specific conduct being investigated. We have again concluded that Dr. McNiel has read too much into *State ex rel. Shriver v. Leech*.

While the Tennessee Supreme Court reiterated in *State ex rel. Shriver v. Leech*, 612 S.W.2d at 456, that there is a due process right to refuse unreasonable and irrelevant investigative demands, the court did not hold that persons receiving requests for records must be provided with specific information regarding the conduct that is being investigated. In fact, the court implied that the CID at issue in the case would have been acceptable had it complied with the underlying statute by providing general information regarding the case or matter under investigation and the parties to the case or investigation. *State ex rel. Shriver v. Leech*, 612 S.W.2d at 456.

In one of the cases cited by the Tennessee Supreme Court in *State ex rel. Shriver v. Leech*, the United States Supreme Court pointed out that the requirement that the records or papers be "particularly described" was intended to ensure that the request for records was not so indefinite or broad as to be unreasonable. *Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 206-08, 66 S.

---

[36]Tenn. Code Ann. § 63-1-117(a)(1)(B)(i).

[37]Tenn. Code Ann. § 63-1-117(a)(1)(B)(ii)(a).

[38]Tenn. Code Ann. § 63-1-117(a)(1)(B)(iii)(a).

[39]Tenn. Code Ann. § 63-1-117(a)(1)(B)(iii)(c).

Ct. 494, 504-05 (1946). The nature of the investigation may be stated in general terms because insisting upon too much specificity would only breed litigation and encourage everyone investigated to challenge the sufficiency of the notice. *In re Gold Bond Stamp Co.*, 221 F. Supp. 391, 397 (D. Minn. 1963).

As soon as Dr. McNiel was served with the written request for records, he knew (1) that the records were being sought by an investigator employed by the board, (2) that the records being sought pertained only to the patients named in the request, (3) that at least three of the thirty patients whose records were being requested had authorized him to release their records, (4) that the records pertained to a verified complaint about him that had been filed with the board, and (5) that another physician had independently determined that the records were being requested in good faith and that the requested records were needed to resolve the complaint. He also knew that, in reaching the conclusion that the requested records were needed to resolve the complaint, the independent physician had considered the nature of the complaint, the possible effect of the request on Dr. McNiel's practice, and the interests of the public.

Dr. McNiel has never claimed that the request for records was unduly broad or that it would have been unduly burdensome for him to comply with the request. Even though Dr. McNiel was not informed of the specific conduct or practice that was the subject of the verified complaint, we have concluded that the information available to him when he received the request for records was sufficient to enable him to determine objectively whether the request was reasonable in light of the board's broad enforcement and investigatory powers. Accordingly, we agree with the trial court's conclusion that Dr. McNiel received adequate information regarding the investigation when he was served with the request for records.

## VI.

We affirm the portion of the judgment concluding that Dr. McNiel received adequate notice of the purpose of the Division's request for medical records, and we reverse the portions of the judgment concluding that Tenn. Code Ann. § 63-1-117(a)(3) is unconstitutional and awarding Dr. McNiel $20,916 in legal fees. We remand the case to the trial court with directions to dismiss Dr. McNiel's complaint for declaratory judgment, and we tax the costs of this appeal to Frank H. McNiel for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.

-14-