# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 10, 2007 Session

## RODOLFO CASTRO v. PEACE OFFICER STANDARDS AND TRAINING COMMISSION, ET AL.

**Appeal from the Chancery Court for Davidson County**
No. 06-706-III    Ellen H. Lyle, Chancellor

―――――――――――――

**No. M2006-02251-COA-R3-CV - Filed August 11, 2008**

―――――――――――――

The Peace Officers Standards and Training Commission ("POST Commission") decertified an officer previously given preliminary certification pending a background check based upon a plea of guilty and *nolo contendere* to felonies that were entered and set aside in California decades ago. In decertifying the officer, the POST Commission relied upon the position that it had no discretion under its own rules, and that decertification was required. The Chancery Court reversed the POST Commission for failing to give full faith and credit to the California judgment. We hold that the POST Commission failed to adopt criteria for exceptions and waivers as required by Tenn. Code Ann. § 38-8-106. For reasons other than those used by the trial court, we affirm the judgment of the trial court, but modify the judgment to vacate the POST Commission's decision to decertify and remand the matter to the POST Commission to reconsider the officer's decertification in accordance with statutory directives.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed as Modified**

ROBERT S. BRANDT, Sp. J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, Michael A. Meyer, Deputy Attorney General; Lynne T. Edgerton, Assistant Attorney General; William R. Lundy, Jr., Assistant Attorney General, for the appellant, Peace Officer Standards and Training Commission, et al.

Chandra Noel Targerson Flint, Philip N. Elbert, Kristen V. Dyer, for the appellee, Rudolfo Castro.

## OPINION

This appeal results from the 2005 decertification of Clarksville police officer Rudolfo Castro by the state's Peace Officer Standards and Training Commission ("POST Commission"). The POST Commission decertified Officer Castro as a result of trouble he had with the law in 1972 in his native

California. He was eighteen years old at the time. Officer Castro sought judicial review of the POST Commission decision pursuant to the Tennessee Administrative Procedures Act ("APA"), Tenn. Code Ann. § 4-5-101, *et seq*. The Chancery Court reversed Officer Castro's decertification. The POST Commission has appealed. We conclude that the Commission's rules contradict the applicable statute and that it has discretion to consider a waiver of Officer Castro's criminal past. Accordingly, we vacate the Commission's decision to decertify Officer Castro and we remand to the Commission for its consideration in accordance with this opinion.

Officer Castro became a Clarksville officer in 2003. Before that, he served in the U.S. Army for twenty-four years and retired at Fort Campbell as a sergeant first class (E-7). By all accounts he was a competent, well-regarded soldier and leader, and a competent, well-regarded police officer. According to Clarksville Police Chief Mark Smith, Officer Castro passed the extensive background check "with flying colors" and is "the kind of person that we need in law enforcement."

The decertification process began following Clarksville's receipt of Officer Castro's FBI rap sheet that the city requested as part of its routine background check. It did not reach the Clarksville police until after Officer Castro had completed his training, received his commission, and served as a Clarksville police officer for almost a year. The FBI rap sheet shows several robbery and other charges against Officer Castro in 1972 in several San Francisco Bay area counties. The Clarksville police immediately launched an investigation that included interviewing Officer Castro and obtaining records from the California courts.

Officer Castro had disclosed to the Clarksville police during his background check that he had trouble as a juvenile in California. While it is easy to see why Officer Castro said that, it is technically not correct. He was eighteen years old at the time he committed the crimes. According to Officer Castro, most of the charges were dismissed, but he did plead guilty to one robbery charge and *nolo contendere* to another.[1] All parties appear to agree on this point. The court sentenced him under a California youthful offender law that allows qualified defendants between ages eighteen and twenty-one to be sentenced as juveniles and committed to the custody of the California Youth Authority. Officer Castro served close to a year, was released on parole, and was ultimately discharged from the authority's jurisdiction. He was never again charged with a crime.

As might be expected, the records of the California courts' thirty-year-old proceedings are sketchy. There is what appears to be a minute entry of the Superior Court in San Francisco that shows that on November 30, 1973, upon motion of the district attorney, two cases against Officer Castro were dismissed. This was after his discharge from the Youth Authority. The two cases dismissed were presumably the two robbery charges to which he pled. The FBI rap sheet appears to reflect this disposition, noting that the conviction was set aside and that the cases were dismissed "per 1772 W&I." This apparently refers to the California Welfare and Institutions Code § 1772(a)

---

[1] On a standard form used for background investigation purposes, Officer Castro acknowledged that he had been "a suspect, arrested, . . . or convicted of a criminal offense." Officer Castro further provided information that the criminal violations were in California.

which provides:

> (a) Subject to subdivision (b), every person honorably discharged from control by the Youth Authority Board who has not, during the period of control by the authority, been placed by the authority in a state prison shall thereafter **be released from all penalties and disabilities resulting from the offense** or crime for which he or she was committed, and every person discharged may petition the court which committed him or her, and the **court may upon that petition set aside the verdict of guilty and dismiss the accusation** or information against the petitioner who shall thereafter be released from all penalties and disabilities resulting from the offense or crime for which he or she was committed, including, but not limited to, any disqualification for any employment or occupational license, or both, created by any other provision of law.

(emphasis added).

It appears that both the conviction and *nolo contendere* charges were set aside and dismissed under § 1772(a).

The anomaly of Officer Castro's decertification was obvious to everyone who attended the POST Commission committee hearing. Officer Castro not only avoided any more brushes with the law, but served his country for twenty-four years in the armed forces and rose to a high non-commissioned officer rank. Chief Smith explained to the POST Commission that he wants to keep him on the force. POST Commissioners who spoke at the hearing spoke favorably of Officer Castro. General Brent Cherry, a member of the Commission, said Officer Castro "did everything right and he is a great success story." The California law that allowed the eighteen-year-old to be treated as a juvenile worked just as its drafters no doubt hoped it would. A troubled teenager rehabilitated himself and has been a contributing member of society for three decades.

The POST Commission did not deny Officer Castro's application on the merits. Instead, the Commission concluded that under its rules it had no discretion in the matter and that the law required that Officer Castro be decertified due to the set aside and dismissed the felony pleas in his distant past. According to General Cherry, his "reading of the rules does not allow a waiver where there is a felony charge," and "it is very unfortunate." General Cherry further stated "[U]nfortunately, as our rules are written, I don't believe we have the discretion to grant a waiver in this case. And, I apologize." Commissioner Verna Wyatt said, "I don't think we have a choice." Commissioner Pierce said "all we can do is decertify." After the vote to decertify Officer Castro, Chairman Fitzgerald said, "there's an appeal process to Chancery Court, and I think it would be best if you attempt it. You know, this is a unique situation." Every single member of the POST Commission, save one, expressed regret on the record that Officer Castro's request for a waiver was to be refused. One Commission member made no comment on the issue. While the POST Commission did not cite the rule it was relying on at the hearing, the letter to Officer Castro formally notifying him of the POST Commission's decision relied on Tenn. Code Ann. § 38-8-104 and Tenn. Rules & Regs. Rule

1110-2-.04(4).[2]

Officer Castro petitioned the Chancery Court to review the POST Commission's order decertifying him based on two grounds. First, Officer Castro challenged the Commission's rules which the POST Commission apparently relied upon when it held that the rules allowed no exceptions or waivers to the requirement of Tenn. Code Ann. § 38-8-104(c). Officer Castro's second challenge is based on the proposition that the POST Commission did not give full faith and credit to the California judgment.

The Chancery Court reversed the POST Commission decision based upon full faith and credit. The Court found the Commission's decision to rely solely upon Officer Castro's two pleas and not rely upon the later dismissal and the setting aside of the pleas violated the United States Constitution by failing to give full faith and credit to the California judgment.

## I. STANDARD OF REVIEW

Under the APA, a court may disturb an administrative decision only if the administrative findings, inferences, conclusions or decisions are:

1.      In violation of constitutional or statutory provisions;

2.      In excess of the statutory authority of the agency;

3.      Made upon unlawful procedures;

4.      Arbitrary or capricious are characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

5.(A)   Unsupported by evidence that is both substantial and material in the light of the entire record. . . .

Tenn. Code Ann. § 4-5-322(h).

## II. STATUTORY REQUIREMENTS

The General Assembly created the POST Commission as part of a broad scheme to establish standards and training for law enforcement officers throughout Tennessee. Tenn. Code Ann. § 38-8-101 *et seq*. The Commission is given the responsibility to establish minimum standards for officers. Tenn. Code Ann. § 38-8-104(a)(5). The statutes themselves establish some qualifications. One is that a person "[n]ot have been convicted of or pleaded guilty to or entered a plea of *nolo contendere* to any felony charge or to any violation of any federal or state laws . . . relating to force, violence,

---

2Rule 1110-2-.04(4) is a procedural rule describing how a decertified officer can request a hearing.

theft, dishonesty, gambling, liquor or controlled substances." Tenn. Code Ann. § 38-8-106(4).

The General Assembly, however, did not make these disqualifications an absolute bar to becoming a police officer. It specifically directed the POST Commission to establish criteria for determining whether to grant a waiver. Tenn. Code Ann. § 38-8-104(e) provides:

> The Commission shall establish criteria for determining whether to grant an exception to or to waive the qualifications of § 38-8-106, for a person hired as a police officer after July 1, 1987, except that no waiver or exception shall be granted for dishonorable discharge from the military, mental illness, or a narcotics violation that could result in a felony charge. The Commission's decisions with regard to exceptions or waivers granted under this subsection (e) shall be appealable to the chancery court. The Commission shall adopt rules and regulations in accordance with the provisions of the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, to implement the provisions of this subsection (e).

This statutory directive to the POST Commission is mandatory. Except in the instances listed in the statute, the POST Commission is *required* to establish criteria for exceptions and waivers.

### III. POST COMMISSION RULE

The POST Commission did not fully comply with the mandate that it establish criteria for exceptions and waivers to the qualifications of Tenn. Code Ann. §38-8-106. Instead, it adopted a rule that says that there will be no exceptions and waivers for any felony charge. The rule states:

> Criminal Activity - The Commission may consider a waiver from preemployment requirements relating to criminal activity on an individual basis and depending on the circumstances.
>
> 1. Waivers may be granted if the officer has been convicted of or pleaded guilty to or entered a plea of *nolo contendere* to any violation of any federal or state law or city ordinance (excluding felony charge and domestic violence) with the following charges:
>
>       (i) relating to force, violence, theft, dishonesty, gambling, liquor (including driving while intoxicated);
>
>       (ii) or controlled substances when the offense was classed as a misdemeanor.

Rule 1110-9-.04(1).

There is no language in the statute that exempts the Commission from the requirement that it establish criteria for determining whether to grant an exception or waiver in felony cases. When the commission adopted this rule, it violated Tenn. Code Ann. §38-8-104(e). This statutory violation is crucial to Officer Castro, for the POST Commission members decided that the rule gave them no choice, *i.e.*, they could not make an exception and they could not grant a waiver even if they wanted to. While it appears from the comments of the members that they would never have revoked his certification if they believed they had a choice, they never reached the merits of Officer Castro's case.

The POST Commission must consider Officer Castro's case under the remaining valid part of its rule, the first sentence that provides that it will consider it "on an individual basis and depending on the circumstances." Under that remaining valid portion of the rule, the POST Commission has the discretion to grant an exception or waive the pleas that were set aside and dismissed.

## IV. CHALLENGING THE VALIDITY OF THE RULES

As the Chancery Court discussed in its final order, Mr. Castro had included in his petition an assertion that the Commission's decision was arbitrary and capricious because it was based on a rule that did not create conditions for exemptions where felony guilty pleas were involved, contrary to the language of the statute. While the trial court decided that it need not resolve that issue in light of its ruling on the full faith and credit issue, the court nonetheless questioned its authority to determine the validity of the rule in the procedural context of the case. In this appeal, the Commission argues that the trial court correctly concluded it had no authority to determine the validity of the rule in this case.

The trial court indicated that it was precluded from considering the validity of the Commission's rule on exceptions or waivers because Mr. Castro had not petitioned the Commission for a declaratory order pursuant to Tenn. Code Ann. § 4-5-223 (authorizing "any affected person" to petition an agency for a declaratory order "as to the validity or applicability of a statute, rule or order" within the agency's jurisdiction). That is the Commission's position in this appeal. As the trial court noted, such a petition is a prerequisite to obtaining a declaratory judgment from a court on the validity of a rule or its application to the petitioner's circumstances. Tenn. Code Ann. § 4-5-225(b). A different subsection of Tenn. Code Ann. § 4-5-225 describes the type of action to which the prerequisite applies:

> The legal validity or applicability of a statute, rule or order of an agency to specified circumstances may be determined in a suit for a declaratory judgment in the chancery court of Davidson County, unless otherwise specifically provided by statute, if the court finds that the statute, rule or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the complainant.

-6-

Tenn. Code Ann. § 4-5-225(a).

Mr. Castro did not file an action for a declaratory judgment.[3] Instead, he filed a petition for judicial review of the agency decision decertifying him as a police officer after a contested case hearing, pursuant to Tenn. Code Ann. § 4-5-322. The declaratory order requirement of Tenn. Code Ann. § 4-5-225(b) does not apply to judicial review under Tenn. Code Ann. § 4-5-322. By its own language, Tenn. Code Ann. § 4-5-225, including the requirement of first asking the agency for a declaratory order, applies only to suits for declaratory judgment.

The two types of actions are governed by different statutory provisions that are codified in different parts of the APA, by different procedures, and by different scopes of trial court decision-making. In fact, a direct or original action for declaratory judgment cannot be brought in conjunction with an action that is appellate in nature, such as judicial review under the APA. *See Winkler v. Tipton County Bd. of Educ.*, 63 S.W.3d 376, 383 (Tenn. Ct. App. 2001); *Goodwin v. Metro. Bd. of Health*, 656 S.W.2d 383, 386-87 (Tenn. Ct. App. 1983) (condemning the "joinder of an appeal with an original action and the simultaneous consideration of both at the trial level").[4]

In the case before us, the agency used the rule in question to decertify Mr. Castro as a police officer. As the Commission explains, "POST instituted proceedings pursuant to Tenn. Code Ann. §§ 38-8-104 and 38-8-105, and POST Rule 1110-2-.04(4), to decertify Castro as a peace officer." The application of the rule to Mr. Castro's circumstances was determined in the hearing.[5] Judicial review of an agency decision in a contested case includes, *inter alia*, consideration of whether the administrative agency's findings or decision are in violation of statutory provisions, exceed the authority of the agency, or are arbitrary or capricious. Tenn. Code Ann. § 4-5-322(h). Application of a rule that is inconsistent with statutory directive to the agency could be described by any of those grounds.

A request for a declaratory order from an agency and a suit for declaratory judgment seek to have a rule or statute interpreted as applied or its validity determined outside of specific agency enforcement or regulatory actions. In a case such as the one before us, however, the agency acted

---

[3]The Commission characterizes Mr. Castro's argument that the rule is invalid as a request for a declaratory order invalidating the Commission's rule that prohibits certification where any felony guilty plea is involved.

[4]In *Wimley v. Rudolph*, 931 S.W.2d 513 (Tenn. 1996), the Supreme Court held that the principle established in *Goodwin* and followed in other cases did not affect the resolution of the case before it because in those cases "plaintiffs, pursuant to administrative appeals, attempted to join original actions for inconsistent relief with the judicial review provided in the Uniform Administrative Procedures Act." *Id*. at 516. However, since the plaintiff in *Wimley* sought relief not inconsistent with the APA, the Court declined to apply the *Goodwin* rule. *Id.* The *Wimley* holding does not affect the continuing validity of the prohibition on combining an original action with an action for judicial review.

[5]Most cases involving judicial review of an agency decision involve the application of a statute or rule to a particular party's circumstances, *i.e.*, the agency has applied a rule or statute. Consequently, requiring a separate petition to declare the applicability of a rule, one of the subjects included in Tenn. Code Ann. § 4-5-223, would be redundant and unnecessary.

in its regulatory capacity with regard to a particular matter. The Commission already had the matter of Mr. Castro's decertification before it, having instituted the proceedings, and, as was required, scheduled and held a contested case hearing on it. We see no basis for requiring a party in that situation to initiate a separate administrative proceeding by filing a petition for declaratory order.

The purpose of the requirement for first asking an agency for a declaratory order is primarily to give the agency notice of a matter and the opportunity to address that matter. Obviously, that goal is not relevant to a matter in which the agency has initiated proceedings. Further, while an agency may refuse to issue a declaratory order, it may also decide to convene a contested case hearing on the request and, after such a hearing, render a declaratory order. Tenn. Code Ann. § 4-5-223. If the agency chooses to convene a contested case hearing, its decision is then reviewed under Tenn. Code Ann. § 4-5-322, the provision governing judicial review of administrative decisions in a contested case proceeding. Tenn. Code Ann. § 4-5-102(3) (defining contested case as including a declaratory proceeding); *See McNeil v. Cooper*, 241 S.W.3d 886, 900 (Tenn. Ct. App. 2007); *see also* Tenn. Code Ann. § 4-5-322(a) (providing that judicial review under the chapter on contested cases is the only available method of judicial review of a final agency decision in a contested case).

It is not unusual for a party who has been subjected to an agency's regulatory procedures to challenge the validity of the rule or statute which the agency has applied to that party's detriment. If an administrative agency relies on a rule when it proceeds with an action affecting an individual (*e.g.*, revocation of a license, denial of a landfill site, etc.), the validity of the rule as well as its application can be raised. We find no reason why Mr. Castro, for example, who argues that the rule could not be applied against him, should have been required to file a separate action, either before the Commission or in court, to challenge the rule that the Commission used to deny him a waiver. We hold that Tenn. Code Ann. § 4-5-225(a) does not require a separate proceeding.

In this appeal, the Commission has not argued that Mr. Castro failed to raise the validity of the rule in the administrative proceeding and, therefore, was precluded from raising it in the trial court. The Commission did not argue that omission in the trial court either. Mr. Castro raised the issue of the rule's compliance with the statute in his chancery court pleadings, including his initial petition. The Commission did not object or file any pleading asserting that those issues could not be raised in this action. Instead, after acknowledging Mr. Castro's challenge to the validity of the rule, the Commission stated that it contended that the rule in question is valid. Indeed, the Commission's brief in the trial court argued that the rule was "well within the bounds of the Commission's statutory authority." Accordingly, we need not resolve the question of whether the validity of the rule was raised in the administrative proceeding since the Commission has waived any objection on that basis.

## V. EFFECT OF THE CALIFORNIA JUDGMENT

The Chancery Court determined that the POST Commission violated the full faith and credit clause of the United States Constitution when the Commission failed to give effect to the California court order setting aside the guilty plea, dismissing the case, and setting aside employment

-8-

qualifications. According to Officer Castro's argument, since the California order effectively removed Officer Castro's pleas to the charges, the POST Commission was obligated to do likewise under the full faith and credit clause of the United States Constitution.

As discussed earlier, we do not believe resolution of this appeal need reach constitutional proportions since the valid portion of the POST Commission rule does not mandate decertification.

## CONCLUSION

The judgment of the Chancery Court is modified to vacate the decision of the Commission decertifying Mr. Castro, and the matter is remanded to the POST Commission for its consideration of the waiver request by the Clarksville Police Department in accordance with statutory directives. Costs of this appeal are divided equally between the POST Commission and Officer Castro.

_____
ROBERT S. BRANDT, JUDGE